In re George A. BAVELIS, Debtor.

George A. Bavelis, Plaintiff,

v.

Ted Doukas, et al., Defendants.

Bankruptcy No. 10–58583.
Adversary No. 10–2508.

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division,
at Columbus.

May 31, 2011.

Marion H. Little, Jr., Richard K. Stovall, Zeiger, Tigges & Little LLP, Columbus, OH, for Debtor and Plaintiff.

Steven Newburgh, Steven S. Newburgh, P.A., West Palm Beach, FL, Philomena S. Ashdown, Cincinnati, OH, for Defendants.

John M. Stravato, Melville, NY, pro se.

## *MEMORANDUM OPINION AND ORDER ON MOTIONS REQUESTING DISMISSAL, TRANSFER, ABSTENTION OR REMAND*

JOHN E. HOFFMAN, JR., Bankruptcy Judge.

### I. Introduction

In this adversary proceeding commenced by the debtor and debtor in possession in the underlying Chapter 11 bankruptcy case, George A. Bavelis ("Debtor"), the issue before the Court at this stage of the litigation is not whether the Debtor's claims for relief have merit, but rather whether the Court should adjudicate those claims at all. The claims arise out of transactions between the Debtor and companies with which he is affiliated, on the one hand, and Mahammad Qureshi ("Qureshi"), Ted Doukas ("Doukas"), Masroor Rab ("Rab") and companies with which they are affiliated, on the other. The Debtor seeks relief against Qureshi, Doukas and Rab, as well as against other defendants, under both the Bankruptcy Code and Florida law. Among other things, the Debtor requests, pursuant to 11 U.S.C. §§ 544(b) and 548, the avoidance of certain transfers that he alleges were constructively fraudulent and the recovery of the property transferred, or its value, for the benefit of his bankruptcy estate under § 550.

In response, Qureshi, Doukas, Rab and certain of the other defendants ask the Court to dismiss, transfer, remand or abstain from hearing this adversary proceeding.[1] In so doing, they assert several legal

---

1. The defendants who are requesting that the Court decline to hear this adversary proceed-

theories, including lack of subject-matter and personal jurisdiction, improper venue, mandatory and permissive abstention and equitable remand. For the reasons explained below, the Court concludes that it has core subject-matter jurisdiction over the Debtor's causes of action brought pursuant to the Bankruptcy Code and related-to jurisdiction over his state law claims. The Court also finds that venue of this adversary proceeding is proper in the Southern District of Ohio, that transfer to another district is not warranted and that abstention and remand also are not appropriate. Likewise, the Qureshi Defendants' arguments do not support their requests that the Court dismiss this adversary proceeding based on a lack of personal jurisdiction. Although the Qureshi Defendants are correct that the process served on them was insufficient, this means only that the summonses served by the Debtor must be corrected and re-served on the Qureshi Defendants within 30 days after the entry of this opinion and order if the Court is to have personal jurisdiction over them, not that the adversary proceeding should be dismissed. The Court, therefore, declines to dismiss, transfer, remand or abstain from hearing this adversary proceeding.

## II. Jurisdiction

■ The Court has jurisdiction to hear and determine the Motions pursuant to 28 U.S.C. §§ 157 and 1334 and the general order of reference entered in the Southern District of Ohio. Although the Court's authority to decide this adversary proceeding has been challenged, the Court has jurisdiction to determine whether it in fact has subject-matter jurisdiction. *See, e.g., Chicot Cnty. Drainage Dist. v. Baxter State Bank,* 308 U.S. 371, 376–77, 60 S.Ct. 317, 84 L.Ed. 329 (1940); *Pratt v. Ventas, Inc.,* 365 F.3d 514, 521 (6th Cir.2004) (" 'The court has the authority to pass upon its own jurisdiction. . . .' " (quoting *Chicot,* 308 U.S. at 377, 60 S.Ct. 317)); *Mata v. Eclipse Aerospace, Inc. (In re AE Liquidation, Inc.),* 435 B.R. 894, 900 (Bankr.D.Del.2010) (citing *Chicot* for the proposition that "[t]he Court has jurisdiction to determine whether it has subject matter jurisdiction over the . . . [a]dversary [p]roceeding").

■ In addition, although the core nature of the claims asserted in this adver-

ing fall into two groups: (1) Qureshi; Rab; MAQ Management, Inc. ("MAQ Management"); Qureshi Family, LLC ("Qureshi Family"); FLOVEST, LLC ("FLOVEST"); GMAQ, LLC ("GMAQ"); BMAQ, LLC ("BMAQ"), BNK Real Estate, LLC ("BNK"); and Financial Lending Services, LLC ("FLS") (collectively, "Qureshi Defendants"); and (2) Doukas; Nemesis of LI Corp. ("Nemesis"); Quick Capital of LI Corp. ("Quick Capital") and R.P.M. Recoveries, Inc. (collectively, "Doukas Defendants"). The Court will refer to the Qureshi Defendants and the Doukas Defendants collectively as "Defendants." This matter is before the Court on the Motion of the Qureshi Defendants: to Dismiss for Lack of Personal Jurisdiction, Lack of Subject–Matter Jurisdiction, Improper Venue, Insufficiency of Service of Process, or in the Alternative for Mandatory Abstention ("Qureshi Motion") (Doc. 45) and the Motion of the Doukas De-

fendants to Dismiss for Improper Venue or, Alternatively for Transfer and for Determination of Mandatory Abstention, Permissive Abstention and Equitable Remand ("Doukas Motion") (Doc. 63). As described below, there is a dispute among the parties regarding one-half of the ownership interest in FLOVEST, GMAQ and BMAQ. The Qureshi Motion states that "[c]ounsel for . . . Doukas, has . . . [represented] that Mr. Doukas supports and joins in [the Qureshi Motion] to the extent of his ownership of these entities." Qureshi Motion at 1 n.*. The Court will refer to the Qureshi Motion and the Doukas Motion collectively as the "Motions." The Debtor has filed a combined memorandum in opposition to the Motions ("Combined Memorandum") (Doc. 85) and an appendix of exhibits in support of the Combined Memorandum ("Appendix") (Doc. 86).

sary proceeding is disputed, the Motions themselves constitute core proceedings. Motions seeking dismissal based on an alleged lack of subject-matter jurisdiction are core proceedings. *See Casey v. Grasso (In re Riccitelli)*, 320 B.R. 483, 487 (Bankr. D.Mass.2005) ("This motion (as opposed to the adversary proceeding as a whole) is a proceeding ... to determine whether the court has subject matter jurisdiction over the adversary proceeding.... [T]his Court has jurisdiction to hear and determine the motion to dismiss and to enter an appropriate and final order on it."). So too are motions seeking abstention, remand and transfer of venue. *See Frelin v. Oakwood Homes Corp.*, 292 B.R. 369, 376 (Bankr. E.D.Ark.2003) (holding that motions for abstention, remand and transfer of venue are core proceedings and that the court has the authority to enter final orders on such motions); *Brizzolara v. Fisher Pen Co.*, 158 B.R. 761, 767 (Bankr.N.D.Ill.1993) (same); *Christensen v. St. Paul Bank for Coops. (In re Fulda Indep. Co-op.)*, 130 B.R. 967, 972–73 n. 5 (Bankr.D.Minn.1991) (explaining that bankruptcy courts are authorized to enter final orders on motions for abstention and remand as a result of the Judicial Improvements Act of 1990). Accordingly, the Court has the authority to enter an order on the Motions without submitting proposed findings of fact and conclusions of law to the District Court.

### III. Background

The background set forth below is based on the Court's review of the Complaint, the Motions, the affidavits filed by the parties and the entire record of the Debtor's bankruptcy case and this adversary proceeding. The Court is providing this background only for the purpose of its analysis of the issues presented by the Motions, not for the purpose of making findings of fact relevant to the merits of the Complaint or to express any views regarding the veracity of the allegations made by the parties.

### A. The Debtor's Bankruptcy Case and His Assets

The Debtor grounds his position regarding venue on the pendency of his bankruptcy case in the Southern District of Ohio, which, in turn, is based in part on the location of his principal assets here. On July 20, 2010 ("Petition Date"), the Debtor commenced a case under Chapter 11 of the Bankruptcy Code in this Court. Among other things, he asserts that his principal assets were located in the Southern District of Ohio as of the Petition date, *see* Voluntary Petition (Doc. 1 in Case No. 10–58583), and those assets and their then current approximate values, included the following: a brokerage account opened by the Debtor in 2005 with Fifth Third Securities, Inc. ("Brokerage Account") in Columbus, Ohio ($11.4 million);[2] business assets of an unspecified value; and real property that the Debtor has owned in Columbus for more than 24 years ($435,000).[3] The aggregate value of

---

2. *See* Motion of Fifth Third Bank for Relief from Stay ("Fifth Third Motion") (Doc. 33 in Case No. 10–58583) at 2 and Exhibit K.

3. *See* Affidavit of George A. Bavelis (copy attached as Exhibit 1 to the Appendix) at ¶¶ 2 & 6 ("[B]oth immediately before and after my Bankruptcy filing, I have maintained a residence, which I jointly own with my wife, in Upper Arlington, Ohio [located in the Southern District]. I have ... owned it for more than 24 years.... Central Ohio, and specifically, Columbus, is also where I opened and continue to maintain a brokerage account with Fifth Third Securities—an account that currently has a value of more than $13 million."). The Debtor's affidavit is dated December 23, 2010—approximately five months after the Petition Date. The Brokerage Account apparently increased in value during

those assets as of the Petition Date (not including the business assets of an unspecified value) is approximately $11.8 million. The other assets listed on the Debtor's schedules of assets and liabilities, including those clearly located in places other than the Southern District of Ohio and those whose location is not evident, have an aggregate value of less than $8 million.

## B. Other Facts Relevant to the Court's Adjudication of the Motions

### 1. The Debtor's Allegations

#### a. The Events Leading to the Commencement of this Adversary Proceeding

According to the Debtor, the events that ultimately led to the filing of this adversary proceeding began in 2009 when he, FLOHIO, LLC ("FLOHIO") and Bavelis Family, LLC ("Bavelis Family") joined with Qureshi, MAQ Management and Qureshi Family to form additional companies—including three of the other Qureshi Defendants, FLOVEST, BMAQ and GMAQ (collectively, "Bavelis–Qureshi LLCs")—for the purpose of investing in gas stations, office space and mixed-use real estate projects. The Debtor also alleges that the Bavelis–Qureshi LLCs obtained bank financing (including from Fifth Third Bank), that the Debtor and Qureshi executed guarantees in favor of the bank lenders ("Guarantees") and that, while the Debtor advanced sums to service the bank debt, Qureshi failed to do so.

According to the Complaint, Doukas (1) gained the Debtor's trust and persuaded him that he could help resolve business disputes he allegedly was having with Qureshi, (2) thereafter caused Nemesis—a company affiliated with Doukas—to obtain a 10% interest in the Bavelis–Qureshi LLCs by means of assignments the Court will collectively refer to as the "March 2009 Assignments" and (3) later caused the entire remaining interests held by the Debtor, FLOHIO and Bavelis Family in the Bavelis–Qureshi LLCs to be assigned to Nemesis through assignments that the Court will collectively refer to as the "December 2009 Assignments." Doukas and Qureshi, according to the Debtor, were acting in concert to divert assets from the Bavelis–Qureshi LLCs to other entities (including, allegedly, to BNK and FLS), causing the Debtor further exposure on the Guarantees. The Debtor alleges that Rab also was acting in concert with the other Defendants.

In addition, the Complaint alleges that Doukas induced the Debtor to issue a promissory note ("Quick Capital Note" and, together with the March 2009 Assignments and the December 2009 Assignments, the "2009 Transactions") to yet another Doukas-affiliated company—Quick Capital. Prior to the Petition Date, Quick Capital commenced a lawsuit against the Debtor in the Supreme Court of New York, County of Nassau ("New York State Court") for amounts due under the Quick Capital Note ("Quick Capital Lawsuit") despite, according to the Complaint, the Debtor's having repaid to Quick Capital all amounts he actually borrowed from it.

#### b. The Claims for Relief Asserted in the Complaint

##### i. The Bankruptcy Law Counts

After reciting in extensive detail the facts summarized above, the Debtor asserts 14 counts against the Defendants and one count solely against another defendant who is not a party to the Motions.[4] In five

the time that elapsed between the Petition Date and the filing of the Debtor's affidavit.

4. In Count Eight, the Debtor asserts breach of fiduciary duty, dual agency and legal malpractice claims against John Stravato, who

of the counts asserted against the Defendants, the Debtor relies on the Bankruptcy Code to seek relief relating to one or more of the 2009 Transactions. Among those counts, the most salient is Count Ten, in which the Debtor requests, pursuant to 11 U.S.C. §§ 544(b) and 548, avoidance of the March 2009 Assignments and the December 2009 Assignments—which he alleges are constructively fraudulent transfers—and avoidance of the Quick Capital Note as a fraudulently incurred obligation. The Debtor also seeks in Count Ten: (1) the recovery, pursuant to § 550 of the Bankruptcy Code, of the property transferred, or the value thereof, from any Defendants who either are transferees of the 2009 Transactions or the entities for whose benefit such transactions were made; and (2) the preservation, for the benefit of the Debtor's bankruptcy estate, of any avoided transfers pursuant to § 551.

Requests for avoidance of the 2009 Transactions under the Bankruptcy Code also form part of the relief sought in Count One through Count Three. The relief requested in Count One and Count Two that is not sought pursuant to the Bankruptcy Code is discussed in the next subsection of the opinion. In addition to seeking in Count Three the avoidance of the Quick Capital Note pursuant to § 544(b), the Debtor also requests in that count a declaratory judgment that the Quick Capital Note (1) should be rescinded based on fraudulent inducement, (2) was not supported by adequate consideration and (3) has been fully satisfied. Quick Capital is the only Defendant that has filed a proof of claim against the Debtor ("Quick Capital Proof of Claim"). It filed its original proof of claim on December 3, 2010 and an amended proof of claim on February 7, 2011, both before the Debtor filed the Complaint, asserting a claim for $14 million, the amount allegedly due under the Quick Capital Note. *See* Claim No. 49–2. Thus, the allegations of Count Three, which were made before Quick Capital filed Claim No. 49–2, are now effectively objections to the Quick Capital Proof of Claim pursuant to § 502(b) of the Bankruptcy Code.

In Count Fifteen, the Debtor seeks the disallowance, pursuant to § 502(d) of the Bankruptcy Code, of any claims held by the Defendants, including any claim asserted by Quick Capital on account of the Quick Capital Note. The claims for relief discussed in this subsection of the opinion are referred to later as the "Bankruptcy Law Counts."

#### ii. The State Law Counts

Portions of Count One and Count Two assert claims for relief under Florida law, as do the entirety of the remaining counts of the Complaint against the Defendants not previously discussed, which assert the following causes of action arising solely under Florida law: Court Four (declaratory relief as to transfers other than the 2009 Transactions, including certain transfers to FLS and BNK and certain transfers that Qureshi and Doukas allegedly caused the Bavelis–Qureshi LLCs to make); Count Five (tortious interference as to the Guarantees); Count Six (contribution and indemnification); Count Seven (breach of fiduciary duty and the duty of good faith); Count Nine (duress/violation of Fla. Stat. § 415.1111); Count Eleven (fraudulent inducement/promissory fraud); Count Twelve (negligent misrepresentation); Count Thirteen (promissory estoppel) and Count Fourteen (civil conspiracy and/or aiding and abetting). As remedies,

has filed an answer to the Complaint, but has not sought to dismiss, transfer or otherwise

dispose of the adversary proceeding.

the Debtor seeks compensatory damages, the imposition of a constructive trust over the assets of the Defendants and an injunction against, among other things, the Defendants transferring any interests they have in the Bavelis–Qureshi LLCs.[5] The Court will refer to the causes of action discussed in this subsection of the opinion as the "State Law Counts."

### 2. The Allegations of the Qureshi Defendants

In contrast to the Debtor, the Qureshi Defendants have a markedly different view of the events described above.[6] They have brought to the Court's attention two lawsuits pending in the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County, Florida ("Florida State Court"). Those lawsuits predate this adversary proceeding and relate to certain—but not all—of the 2009 Transactions. The parties to one or both of the lawsuits pending in the Florida State Court that also are parties to this adversary proceeding are the Debtor, FLOHIO,[7] FLOVEST, MAQ Management, Nemesis and Doukas.

By way of background, MAQ Management and—at least until the transactions with Nemesis occurred—FLOHIO, were members of FLOVEST. On December 21, 2009 (following the transactions with Nemesis), FLOHIO commenced a lawsuit against FLOVEST in the Florida State Court seeking the dissolution of FLOVEST and the appointment of a receiver for the windup and liquidation of that entity ("Dissolution Lawsuit") based on the allegation that FLOVEST's members (which FLOHIO alleged continued to include itself) were deadlocked and thus unable to effectively conduct business in connection with projects in Florida and Ohio.

On December 30, 2009—after the commencement of the Dissolution Lawsuit but before the Petition Date—MAQ Management commenced a lawsuit against FLOHIO and the Debtor requesting that the Florida State Court require FLOHIO to sell any interest it had in FLOVEST to MAQ Management and also requesting that the Florida State Court hold the Debtor in breach of fiduciary duties he purportedly owed to MAQ Management ("Specific Performance Lawsuit" and, together with the Dissolution Lawsuit, "Florida Lawsuits"). On February 11, 2010, FLOHIO asserted a counterclaim in the Specific Performance Lawsuit request-

---

5. The Debtor also seeks the appointment of a receiver for certain of the Defendants. *See* Compl. at 46. Section 105(b) of the Bankruptcy Code, however, provides that "a court may not appoint a receiver in a case under this title." 11 U.S.C. § 105(b).

6. Qureshi and Rab are residents of Florida, and each of the other Qureshi Defendants is organized under the laws of Florida. *See* Affidavit of Masroor Rab ¶ 2 (copy attached as Exhibit B to the Qureshi Motion) ("I am a resident of the State of Florida."); Affidavit of Mahammad Qureshi ¶ 2 (copy attached as Exhibit C to the Qureshi Motion) ("I am a resident of the State of Florida."); Compl. ¶¶ 11–20 (stating that the individual Qureshi Defendants are Florida residents and that the other Qureshi Defendants are business entities organized in Florida).

7. The Debtor, through an affiliate, apparently has only a partial interest in FLOHIO. *See* Attachment to Proof of Claim of FLOHIO (Claim No. 35–1 filed by FLOHIO in the Debtor's case) ("1) Claimant in this claim is FLOHIO, LLC (FLOHIO), an Ohio Limited Liability Company. This claim is being filed by the Yessios Family Limited Partnership (YFLP), and by the Vakaleris Family Limited Partnership (VFLP), each of which owns one-third of FLOHIO. 2) The other owner of FLOHIO is Bavelis Family, LLC, which also owns a one-third interest in FLOHIO. 3) The Debtor, George Bavelis, is the General Manager of FLOHIO, as stated in the FLOHIO Operating Agreement, executed on or about October 1, 2002 . . . .").

ing that the Florida State Court require MAQ Management to sell its interest in FLOVEST to FLOHIO; FLOHIO also asserted claims against Nemesis and Doukas seeking a declaration that they have no right to FLOHIO's purported membership interest in FLOVEST.

During a hearing held in the Dissolution Lawsuit, an attorney for FLOVEST offered a competing view of certain of the events described in the Complaint. In pertinent part, the attorney for FLOVEST stated as follows:

[FLOHIO] decided it did not want to be part of … MAQ Management anymore, and pursuant to the terms of the operating agreement extended an offer for MAQ Management to purchase [FLOHIO's] shares…. So, [FLOHIO] sent this offer … but added some terms that are not in the operating agreement [asking that] Mr. George Bavelis individually … be released from all of these loans that he decided to personally guarantee, even though the operating agreement doesn't require it. So … MAQ Management … sen[t] back the certified letter accepting the offer to purchase [FLOHIO's] interest … for $100,000 … pursuant to the terms of the operating agreement taking out any extra terms that aren't specifically set forth in the operating agreement…. [T]he operating agreement says you can seek specific performance to require them to conform to the terms of the operating agreement. So … we filed an action for specific performance. There [are] a couple other counts against other entities, but we filed an action for specific performance…. [FLOHIO] approaches an entity known

as Nemesis of LI Corp … a company that was created by Mr. Ted Doukas … [FLOHIO] transfers 100 percent of its interest in [FLOVEST] to Nemesis of LI Corp…. So … despite the fact that [FLOHIO] had already agreed or made the offer or triggered the sale of their shares, they then transferred the sale of their shares to a wholly owned third separate party … [B]asically our complaint is suing for specific performance against [FLOHIO] to require them to sell. We are also suing Mr. Bavelis individually and as an agent of [FLOHIO] because he breached his fiduciary duty to [MAQ Management] by requiring as a condition of the sale that he be personally released….

*See* Transcript attached as Exhibit E to Qureshi Motion at 11–14.

### 3. The Allegations of the Doukas Defendants

As described in more detail below, the Doukas Defendants seek a transfer of several of the claims asserted in the Complaint to New York and others to Florida. In support of this request, Doukas has filed an affidavit ("Doukas Bankruptcy Court Affidavit"), *see* Exhibit A to Doc. 70, alleging that the 2009 Transactions have little, if any, connection with Ohio. *See* Doukas Bankruptcy Court Affidavit ¶ 10. He also states that "[v]irtually all of the witnesses concerning the allegations of the Complaint are residents of the State of Florida, in particular, Palm Beach County, Florida." Id. ¶ 11.

In an affidavit he filed in the New York State Court, a copy of which is attached as part of Exhibit N to the Fifth Third Motion ("Doukas State Court Affidavit"),[8]

---

**8.** Quick Capital is organized under the laws of New York. *See* Notice of Removal filed with the United States District Court for the Eastern District of New York ("New York Federal

Court") (copy attached as Exhibit A to Doc. 71) ¶ 10; Quick Capital Note attached as part of Exhibit N to Fifth Third Motion. Doukas,

Doukas stated that the Debtor is in default of his obligations under the Quick Capital Note. Specifically, Doukas contends that the Debtor was, "five years after [June 21, 2009] . . . to make a balloon payment to [Quick Capital] for the sum of $14,000,000 [and] was additionally obligated to make interest only payments monthly at a rate of 5% per annum starting on August 1, 2009 and monthly thereafter [but] [t]he [Debtor] has failed to make the interest only payment due February 1, 2010 and every subsequent payment." Doukas State Court Affidavit ¶¶ 2 & 3. The monthly interest payments to be made under the Quick Capital Note are $58,333.33. *See* copy of Quick Capital Note attached to Exhibit N to the Fifth Third Motion. The Debtor filed a notice of removal of the Quick Capital Lawsuit to New York Federal Court before the Petition Date.

### IV. Arguments of the Parties

The Qureshi Defendants request dismissal based on a purported lack of both personal and subject-matter jurisdiction as well as on allegations of insufficiency of process and service of process. Each of the Defendants contends that venue of this adversary proceeding is improper in the Southern District of Ohio, that it should be transferred to another district and that both mandatory and permissive abstention apply. Finally, the Doukas Defendants assert that equitable remand is appropriate.

### V. Legal Analysis

#### A. Subject–Matter Jurisdiction

 Before addressing the other issues presented by the Motions, the Court first must consider whether it has jurisdiction over the Complaint. The Court must do so with respect to each of the Bankruptcy Law Counts and each of the State Law Counts even though certain of those

counts are asserted only against parties—the Doukas Defendants—that have not challenged the Court's subject-matter jurisdiction. *See Rhiel v. Cent. Mortg. Co. (In re Kebe)*, 444 B.R. 871, 875 (Bankr. S.D.Ohio 2011) ("A court's duty to review subject-matter jurisdiction is ongoing and 'applies irrespective of the parties' failure to raise a jurisdictional challenge on their own . . . .'" (quoting *Campanella v. Commerce Exch. Bank*, 137 F.3d 885, 890 (6th Cir.1998))). It is only "[i]f [subject-matter] jurisdiction exists [that] the court must then determine the manner in which this jurisdiction should be exercised." *Nationwide Roofing & Sheet Metal, Inc. v. Cincinnati Ins. Co. (In re Nationwide Roofing & Sheet Metal, Inc.)*, 130 B.R. 768, 772 (Bankr.S.D.Ohio 1991). "The plaintiff—here, the Debtor—has the burden of proving that the Court has subject-matter jurisdiction." *See Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir.1986). For the reasons stated below, the Court concludes that the Debtor has carried his burden.

 The Qureshi Defendants have challenged the Court's subject-matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure ("Civil Rules(s)"), made applicable in this adversary proceeding by Rule 7012 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rule(s)"). The standard governing a motion brought under Civil Rule 12(b)(1) depends on whether the party seeking dismissal "makes a facial or factual attack on the plaintiff's complaint." *Orrand v. Kin Contractors, LLC*, No. 2:09–cv–1129, 2011 WL 1238295, at *1 (S.D.Ohio Mar.29, 2011) (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir.1990)). "A facial attack merely questions the sufficiency of the

---

though, states that he is a resident of Florida.

*See* Doukas Bankruptcy Court Affidavit ¶ 3.

pleading. In reviewing a facial attack, a court applies the same standard applicable to Rule 12(b)(6) motions." *Id.* "On the other hand, where a district court reviews a plaintiff's complaint under a factual attack, the court does not presume that the plaintiff's allegations are true. In such cases, a court has wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Id.* The Qureshi Defendants contend that the Court lacks subject-matter jurisdiction over this adversary proceeding because, according to them, "[t]he Debtor's claims are based completely in state law and [t]he Qureshi Defendants have not filed a claim in this bankruptcy." Qureshi Motion at 12. That argument strikes the Court as a primarily facial attack on the sufficiency of the Complaint. The question of whether the Debtor's claims are predicated entirely on state law can be determined by a review of the Complaint, and whether the Qureshi Defendants filed a proof of claim against the Debtor (they did not, and no one alleges they did) can be determined by a review of the claims register. Nonetheless, whether the Court considers only the Complaint and the claims register or also considers the Motions, the affidavits and the other documents, the conclusion is the same: The Court has subject-matter jurisdiction over the entire adversary proceeding.

The Court's jurisdiction over this adversary proceeding begins with the Court's jurisdiction over the Debtor's bankruptcy case. Jurisdiction over bankruptcy cases derives from the combined effect of: (1) two provisions of the Judicial Code—28 U.S.C. § 1334(a) (stating that "the district courts shall have original and exclusive jurisdiction of all cases under title 11 [*i.e.,* the Bankruptcy Code,])" and 28 U.S.C. § 157(a) (stating that "[e]ach district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district[,]")— and (2) the general order of reference that has been entered in the Southern District of Ohio pursuant to 28 U.S.C. § 157(a). In turn, § 1334(b) of the Judicial Code sets forth three categories of civil proceedings over which the district courts (and the bankruptcy courts by reference) have original, but not exclusive, jurisdiction: (1) those "arising under title 11," (2) those "arising in" bankruptcy cases and (3) those "related to" such cases. 28 U.S.C. § 1334(b). The Qureshi Defendants contend that the Court does not have jurisdiction over this adversary proceeding pursuant to any of these categories. As explained below, however, the Bankruptcy Law Counts fall within the first category (proceedings arising under title 11), and the State Law Counts fall within the third (proceedings related to a case under title 11). In short, the Court has jurisdiction over the claims for relief set forth in each count of the Complaint because each of these claims either arises under the Bankruptcy Code or is related to the Debtor's bankruptcy case.

### 1. The Bankruptcy Law Counts

 "The phrase' arising under title 11' describes those proceedings that involve a cause of action created or determined by a statutory provision of title 11[.]" *Michigan Emp't Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.),* 930 F.2d 1132, 1144 (6th Cir. 1991). *See also United Sec. & Commc'ns, Inc. v. Rite Aid Corp. (In re United Sec. & Commc'ns, Inc.),* 93 B.R. 945, 950 (Bankr. S.D.Ohio 1988). Thus, proceedings arising under title 11 include actions brought pursuant to §§ 544(b) and 548 to avoid fraudulent transfers or obligations. *See XL*

*Sports, Ltd. v. Lawler,* 49 Fed.Appx. 13, 21 (6th Cir.2002) ("Section 157(b)(2)(H) of Title 28 specifically provides that 'proceedings to ... avoid ... fraudulent conveyances' are core proceedings. This includes not only avoidance proceedings under § 548(a), but those under § 544(b) as well."). In addition, proceedings arising under title 11 include actions seeking the recovery of the property fraudulently transferred (or its value) under § 550(a), *see Bliss Techs., Inc. v. HMI Indus., Inc., (In re Bliss Techs., Inc.),* 307 B.R. 598, 606 (Bankr.E.D.Mich.2004), and claim objections based on § 502(d).[9] *See McLean v. First Nat'l Bank of Grayson, Kentucky (In re Neese),* 12 B.R. 968, 970 (Bankr. W.D.Va.1981). The Qureshi Defendants argue that the Court lacks subject-matter jurisdiction over the Bankruptcy Law Counts because those counts depend on applicable state law. *See* Qureshi Motion at 5, 13. With respect to fraudulent transfer actions under § 548 and requests for recovery and preservation pursuant to § 550 and § 551, respectively, all of which operate independently of state law, this argument is meritless. The argument also is equally meritless insofar as fraudulent transfer actions brought pursuant to § 544(b) is concerned because such actions arise under the Bankruptcy Code even though state law has an impact on their resolution. *See XL Sports,* 49 Fed.Appx. at 21 ("[A]lthough the substantive law applied in the § 544(b) proceeding would be state law, the claim still arises under title 11 because it is the bankruptcy code that transfers the cause of action from the creditor to the trustee."); *Bliss Techs.,* 307 B.R. at 605 ("Although the trustee must satisfy the elements of state fraudulent

conveyance law to avoid the transfer, it is federal bankruptcy law that gives rise to and defines this cause of action for the trustee, and state law only supplements the power granted by federal bankruptcy law.").

Other than the portion of Count Three in which the Debtor asserts full satisfaction and lack of consideration, the Bankruptcy Law Counts all: (1) relate either to an allegedly fraudulent transfer or fraudulently incurred obligation—or to a claim objection predicated on the avoidance, preservation or recovery of such a transfer or obligation; and (2) arise under one or more of the following provisions of the Bankruptcy Code: §§ 502(d), 544(b), 548, 550 and 551. The portion of Count Three in which the Debtor asserts full satisfaction and lack of consideration under state law essentially became, with the filing of the Quick Capital Proof of Claim, a claim objection pursuant to § 502(b)(1) of the Bankruptcy Code. *See* 11 U.S.C. § 502(b)(1) (providing for the disallowance of a claim when "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured"). Accordingly, the Bankruptcy Law Counts all arise under the Bankruptcy Code, and the Court has subject-matter jurisdiction over them pursuant to 28 U.S.C. § 1334(b).

**2. The State Law Counts**

Because the State Law Counts do not involve claims for relief "created or determined by a statutory provision of title 11," *Wolverine Radio,* 930 F.2d at 1144, they do not "arise under" the Bankruptcy

---

9. Under § 502(d) of the Bankruptcy Code, "the court shall disallow any claim of any entity from which property is recoverable under section ... 550 ... or that is a transferee of a transfer avoidable under section ... 544 ... 547 [or] 548 ... unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section ... 550...." 11 U.S.C. § 502(d).

Code. Nor do they "arise in" the Debtor's case given that they could exist independently of that case. *See also id.* (" '[A]rising in' proceedings are those that, by their very nature, could arise only in bankruptcy cases."); *United Sec. & Commc'ns,* 93 B.R. at 951–52 ("[P]roceedings 'arising in' a case under title 11 . . . [are] those 'administrative' matters that arise *only* in bankruptcy cases . . . those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy." (quoting *Wood v. Wood (In re Wood),* 825 F.2d 90, 97 (5th Cir.1987))). An example of a proceeding arising in a bankruptcy case is a motion requesting that a bankruptcy court interpret or enforce its own order. *See Sterling Vision, Inc. v. Sterling Optical Corp. (In re Sterling Optical Corp.),* 302 B.R. 792, 801 (Bankr.S.D.N.Y. 2003). Other examples are motions—such as those before the Court—asking a court to dismiss, transfer, remand or abstain from hearing an adversary proceeding. Like other matters "arising in" a bankruptcy case, the examples just mentioned exist, at least in the context of a bankruptcy, only because of the bankruptcy case. By contrast, the State Law Counts exist independently of the Debtor's bankruptcy case.

 Nonetheless, the Court has jurisdiction over the State Law Counts because those counts are "related to" the Debtor's bankruptcy case. As the Court recently explained in *Kebe:*

> The Court of Appeals for the Sixth Circuit follows the test for determining "related to" jurisdiction that was enunciated in *Pacor, Inc. v. Higgins (In re Pacor),* 743 F.2d 984 (3d Cir.1984):
>
> > The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is wheth-

er *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy* . . . . An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

*Wolverine Radio,* 930 F.2d at 1142 (quoting *Pacor,* 743 F.2d at 994).

*Kebe,* 444 B.R. at 876. Here, the Debtor is acting in his capacity as the debtor in possession, and any recovery obtained by the Debtor would be for the benefit of his bankruptcy estate. The outcome of the State Law Counts, therefore, conceivably could have an effect on the estate. *See Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.,* 639 F.3d 572, (2d Cir. Apr.12, 2011) ("If either Bondi or PCFL is successful in their claims against [the defendant], the funds they recover will benefit the respective bankruptcy estates. It is not difficult to conclude that the 'conceivable effect' test is satisfied." (citation omitted)); *Browning v. Levy,* 283 F.3d 761, 773 (6th Cir.2002) ("Under [the conceivable-effect] test, [the] claims . . . are related to the bankruptcy proceeding because, if they had been brought during the proceeding, any recovery received . . . would have represented an asset, available for distribution to [the debtor's] creditors. . . ."); *Zaremba v. Pheasant (In re Continental Capital Inv. Servs.), Inc.,* No. 05–3322, 2006 WL 6179374, at \*10 (Bankr.N.D.Ohio June 12, 2006) ("Any recovery by Plaintiff on the Ohio Securities Act claims will augment the existing estate he is administering, making them 'related to' the liquidation proceeding under the *Pacor* test."). Thus, the Court has related-to jurisdiction over the State Law Counts pursuant to 28 U.S.C. § 1334(b).[10]

---

**10.** A party cannot confer subject-matter juris-

diction on a court lacking it, *see Nair v. Oak-

### 3. The Extent of the Court's Jurisdiction

■ The extent of the Court's subject-matter jurisdiction—that is, whether it is core or non-core—is relevant to several other arguments made by the Defendants that are addressed later in different parts of this opinion, so the Court will discuss the core/non-core issue here. According to the Sixth Circuit, a core proceeding is one that " 'either invokes a substantive right created by federal bankruptcy law [that is, it arises under the Bankruptcy Code] or one which could not exist outside of the bankruptcy [that is, it arises in a bankruptcy case].' " *Lowenbraun v. Canary (In re Lowenbraun),* 453 F.3d 314, 320 (6th Cir.2006) (quoting *Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.,* 973 F.2d 474, 483 (6th Cir.1992)). *See also Wolverine Radio,* 930 F.2d at 1144 ("[S]ection 157 apparently equates core proceedings with the categories of 'arising under' and 'arising in' proceedings." (quoting *Wood,* 825 F.2d at 96)); *Land–O–Sun Dairies, Inc. v. Florida Supermarkets, Inc. (In re Finevest Foods, Inc.),* 143 B.R. 964, 967 (Bankr. M.D.Fla.1992) ("Core proceedings are not defined but appear to be co-extensive with the cases designated by the jurisdictional grant of matters 'arising in' or 'arising under' the bankruptcy laws.").

■ Each of the Bankruptcy Law Counts arises under, and invokes rights created by, the Bankruptcy Code and therefore each is a core proceeding under the Sixth Circuit's definition of that term. *See also* 28 U.S.C. § 157(b)(2)(B) (the allowance or disallowance of claims against the estate are core proceedings); 28 U.S.C. § 157(b)(2)(H) (proceedings to determine, avoid or recover fraudulent conveyances are core proceedings). This is equally true of the fraudulent transfer actions that are based in part on state law and the claim objection based on § 502(d). *See Gulf States Exploration Co. v. Manville Forest Prods. Corp. (In re Manville Forest Prods. Corp.),* 896 F.2d 1384, 1389 (2nd Cir.1990) ("[T]he mere fact that Gulf's claim raises issues of state law does not preclude a holding that the adversary proceeding is core. The relevant inquiry is whether the nature of this adversary proceeding, rather than the state or federal basis for the claim, falls within the core of federal bankruptcy power." (citation omitted)); *Global Technovation, Inc. v. Onkyo U.S.A. Corp. (In re Global Technovations, Inc.),* 431 B.R. 739, 747 (Bankr.E.D.Mich. 2010) ("Counts I and II . . . seek to avoid a fraudulent transfer and fraudulent obligations under the combination of 11 U.S.C.

*land Cnty. Cmty. Mental Health Auth.,* 443 F.3d 469, 474 (6th Cir.2006), and a party's views regarding subject-matter jurisdiction therefore are never dispositive. *See Spierer v. Federated Dep't Stores, Inc. (In re Federated Dep't Stores, Inc.),* 328 F.3d 829, 833 (6th Cir.2003) ("[I]t is hornbook law that parties may not waive into or consent to subject matter jurisdiction which a federal court does not properly have." (internal quotation marks omitted)). It is notable, however, that the Doukas Defendants concede that, by filing its proof of claim, *"Quick Capital* has waived core jurisdiction of the bankruptcy court. . . ." *See* Doukas Motion at 5 n.3. In addition, the Qureshi Defendants themselves concede, in connection with their argument regarding permissive abstention (discussed below), that this adversary proceeding "is a non-core, 'related to' matter." Qureshi Motion at 16. As discussed above, the Bankruptcy Law Counts are more than that—those counts arise under the Bankruptcy Code and are core proceedings. But the Sixth Circuit has held that, "for purposes of determining section 1334(b) jurisdiction, it is necessary only to determine whether a matter is at least 'related to' the bankruptcy," *Wolverine Radio,* 930 F.2d at 1141. The Qureshi Defendants' own analysis, therefore, supports the conclusion that the Court has subject-matter jurisdiction over each of the claims asserted in this adversary proceeding.

§ 544(b)(1) and Florida fraudulent transfer statutes. As such, these claims are core proceedings.... Count VI ... seeks disallowance of Defendants' claims ... based on 11 U.S.C. § 502(d). As such, this claim is a core proceeding ...." (citation omitted)), *aff'd*, 2011 WL 1297356 (E.D.Mich. Mar.31,2011).

Similarly, Count Three is a core proceeding even to the extent that it is predicated on the state-law based objections to the Quick Capital Proof of Claim. One reason for this is that the objections involve the "allowance or disallowance of a claim against the estate ... [.]" 28 U.S.C. § 157(b)(2)(B). *See also Bottcher v. Emigrant Mortg. Co., Inc. (In re Bottcher)*, 441 B.R. 1, 3 (Bankr.D.Mass.2010) ("Although all the plaintiff's causes of action are based on state law, most of them effectively serve as objections ... to the defendant's proof of claim.... Thus, the relief requested ... including so much of Count II as seeks rescission, fall foursquare within the core jurisdiction of this Court over the claims allowance process under 28 U.S.C. 157(b)(2)(B)...."); *In re Keefer*, No. 05–70084, 2009 WL 1587593, at *1 (Bank. N.D.Ohio Apr. 17, 2009) ("Debtor's objection to the claim ... is a core proceeding that this court may hear and determine because it involves the allowance or disallowance of a claim against the estate that is not a personal injury or tort claim. 28 U.S.C. § 157(b)(2)(B)."); *In re Kopp*, 374 B.R. 842, 844 (Bankr.D.Kan.2007) (holding that a claim objection brought pursuant to § 502(b)(1) on the basis that the claim was unenforceable under state law was a core proceeding). Another basis for the conclusion that Count Three is a core proceeding (even to the extent that it is seeks to disallow the Quick Capital Proof of Claim based on state law) is that the resolution of Quick Capital's claim "affect[s] the adjustment of the debtor-creditor relationship" and thus comes within the purview of 28

U.S.C. § 157(b)(2)(O). *Gordon Sel–Way, Inc. v. United States (In re Gordon Sel–Way, Inc.)*, 270 F.3d 280, 288 (6th Cir. 2001). In *Gordon Sel–Way*, the Sixth Circuit held that the adjudication of the debtor's tax refund claim against the United States (which had filed a proof of claim against the debtor for unemployment tax penalties) and the government's right to setoff "will determine Sel–Way and the government's rights vis-a-vis one another [and] [t]hus it is clear that the bankruptcy court did have core subject matter jurisdiction over this case." *Id.* Here, Quick Capital filed a proof of claim against the Debtor, and the adjudication of Count Three, therefore, will affect the adjustment of the debtor-creditor relationship between the Debtor and Quick Capital. In sum, the Bankruptcy Law Counts are all core proceedings over which the Court has subject-matter jurisdiction, so that the Court "may hear and determine [them] ... and may enter appropriate orders and judgments [with respect to them], subject to review under section 158 of [the Judicial Code]." 28 U.S.C. § 157(b)(1).

Unlike the Bankruptcy Law Counts, however, the State Law Counts are non-core proceedings. The Court does not reach this conclusion merely because Florida law will affect the resolution of the State Law Counts. In fact, § 157(b)(3) of the Judicial Code mandates that a "determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law." 28 U.S.C. § 157(b)(3). Indeed, it is not uncommon for applicable state law to affect the outcome of core proceedings arising under the Bankruptcy Code. And the Court finds that the State Law Counts are non-core despite also finding, as explained below in connection with its discussion of permissive abstention, that bankruptcy law issues predominate

over state law issues in this adversary proceeding. *See, e.g., Halper v. Halper,* 164 F.3d 830, 839 (3d Cir.1999) (adopting an approach that analyzes the core/non-core question on a claim-by-claim basis while rejecting the approach taken by some courts under which an entire adversary proceeding can be considered core if the core claims asserted in the adversary proceeding heavily predominate over the non-core claims); *SAI Admin. Claim & Creditor Trust v. Benecke–Kaliko AG (In re SAI Holdings Ltd.),* No. 08–3036, 2009 WL 1616663, at *6 (Bankr.N.D.Ohio Feb. 27, 2009) (same); *Beneficial Nat'l Bank USA v. Best Receptions Sys., Inc. (In re Best Receptions Sys., Inc.),* 220 B.R. 932, 950 (Bankr.E.D.Tenn.1998) (same).[11]

Rather, the State Law Counts are non-core because they do not invoke a substantive right created by the Bankruptcy Code and do, in fact, exist outside of bankruptcy. Like other non-core proceedings, each claim asserted in the State Law Counts: "1) is not *specifically* identified as a core proceeding under § 157(b)(2)(B) through (N), 2) existed prior to the filing of the bankruptcy case, 3) would continue to exist independent of the provisions of title 11, and 4) [gives rise to] rights [and] obligations [that] are not significantly affected as a result of the filing of the bankruptcy case." *Nationwide,* 130 B.R. at 775.

▮▮▮▮ Section 157(b), which "sets forth a non-exclusive list of core proceedings[,]" *Gordon Sel–Way,* 270 F.3d at 287, includes—in addition to subsections (B) through (N)—the more general subsections (A) and (O). Section 157(b)(2)(A) refers to "matters concerning the administration of the estate" and § 157(b)(2)(O) to "other proceedings affecting the liqui-

dation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims[.]" 28 U.S.C. § 157(b)(2)(A) & (O). These subsections are the " 'catchall' provisions of bankruptcy court core jurisdiction [and] should be interpreted narrowly...." *Harris v. Wittman (In re Harris),* 590 F.3d 730, 740 (9th Cir.2009), *cert. denied,* — U.S. —, 130 S.Ct. 3413, 177 L.Ed.2d 325 (2010). This does not mean that "there are *no circumstances* under which the 'catchall' provisions can provide core jurisdiction." *Id.* For example, the catchall provisions may provide a basis for core jurisdiction in the context of postpetition transactions with a debtor in possession. *See Nat'l Century Fin. Enters., Inc. v. Gulf Ins. Co. (In re Nat'l Century Fin. Enters., Inc),* 312 B.R. 344, 353 (Bankr. S.D.Ohio 2004) (noting that a debtor in possession's cause of action for collection on a postpetition accounts receivable and a dispute over a postpetition insurance policy held by a debtor in possession would be core proceedings under 28 U.S.C. § 157(b)(2)(A) or (O)). The State Law Counts, however, do not arise from postpetition transactions involving the Debtor. Moreover, the possibility that the Debtor might prevail on the State Law Counts and thereby generate "a greater amount of assets to distribute to [his] creditors" also is not a sufficient basis to make the Court's jurisdiction core under 28 U.S.C. § 157(b)(2)(A) or (O). *Hughes–Bechtol, Inc. v. Constr.Mgmt., Inc. (In re Hughes–Bechtol, Inc.),* 132 B.R. 339, 345 (Bankr. S.D.Ohio 1991), *aff'd,* 144 B.R. 755 (S.D.Ohio 1992). *See also Orion Pictures Corp. v. Showtime Networks, Inc. (In re*

---

**11.** *But see, e.g., Blackman v. Seton (In re Blackman),* 55 B.R. 437, 443 (Bankr.D.C. 1985) ("[W]hen a proceeding is in part a core proceeding and in part non-core, the court[ ] may determine that the entire proceeding is core if the core aspect heavily predominates and the non-core aspect is insignificant.").

*Orion Pictures Corp.)*, 4 F.3d 1095, 1102 (2d Cir.1993).

The only other basis on which the Court could find that the State Law Counts are core claims is that their resolution would affect the adjustment of the debtor-creditor relationship within the meaning of 28 U.S.C. § 157(b)(2)(O). *See Gordon Sel-Way,* 270 F.3d at 288. The Defendants, however, did not file proofs of claim relating to the State Law Counts. For all of the reasons set forth above, the Court concludes that the State Law Counts are non-core. Thus, as explained in more detail below, unless the parties consent and the District Court orders otherwise, this Court would be required to submit, subject to de novo review, proposed findings of fact and conclusions of law to the District Court with respect to the State Law Counts. *See* 28 U.S.C. § 157(c)(1).

## B. Personal Jurisdiction

■■■■ The Qureshi Defendants also contend, pursuant to Civil Rule 12(b)(2), that the Court lacks personal jurisdiction over them.[12] A court may decide a motion brought under Civil Rule 12(b)(2) "on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." *Serras v. First Tenn. Bank Nat'l Ass'n,* 875 F.2d 1212, 1214 (6th Cir.1989) (internal quotation marks omitted). Under either approach, the plaintiff—here, the Debtor—has the burden of demonstrating that personal jurisdiction exists. *Id.*

■■■ The Qureshi Defendants argue that the Court lacks personal jurisdiction over them both under Ohio's long-arm statute and under the decisions issued by the United States Supreme Court, such as *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), articulating the minimum contacts test for personal jurisdiction. According to the Qureshi Defendants, they lack minimum contacts with Ohio, have not transacted business in Ohio and have not engaged in any other activity that should result in their being subject to personal jurisdiction in Ohio. *See* Qureshi Motion at 5–11. Certain of the Qureshi Defendants have submitted affidavits in support of this argument. *See* Affidavit of Masroor Rab ¶¶ 3–4, 6–11; Affidavit of Mahammad Qureshi ¶¶ 3–4, 6–11. No party has requested discovery or an evidentiary hearing on the issue of personal jurisdiction or any other issue before the Court on the Motions, and there is no need for one. For purposes of this opinion, the Court will assume that, absent the Debtor's bankruptcy, there would have been no basis for the exercise of personal jurisdiction over any of the Qureshi Defendants by a court sitting in Ohio. But even if that assumption is correct, the Qureshi Defendants cannot prevail on their attempt to dismiss this adversary proceeding based on a purported lack of personal jurisdiction.

The reason their attempt to dismiss the case on that basis must fail is that the Court may, if the Qureshi Defendants receive sufficient process and service of process (an issue discussed below), exercise personal jurisdiction over them based on

---

12. Unlike subject-matter jurisdiction, the defense of personal jurisdiction is waived by the failure to timely assert it. *See Preferred RX, Inc. v. Am. Prescription Plan, Inc.,* 46 F.3d 535, 550 (6th Cir.1995) ("The defense of lack of personal jurisdiction is waived if omitted from a motion to dismiss under Fed.R.Civ.P.

12, or if not ... included in a responsive pleading. Fed.R.Civ.P. 12(h)."). The Doukas Defendants did not allege in the Doukas Motion that the Court lacks personal jurisdiction over them and therefore have waived that defense.

(1) their contacts with the United States and (2) the provision for nationwide service of process set forth in Bankruptcy Rule 7004. Qureshi and Rab are residents of Florida, the other Qureshi Defendants are organized under the laws of Florida and, to the extent they conduct business, they conduct at least some of it in Florida. The Qureshi Defendants, therefore, have minimum contacts with the United States. *See Giuliano v. Harko, Inc. (In re NWL Holdings, Inc.),* No. 10–52768, 2011 WL 748279, at *3 (Bankr.D.Del. Feb.24, 2011) ("Harko is a New York resident. Its contacts with Delaware are irrelevant so long as it has contacts somewhere within the United States. Thus, the Court concludes that as a resident of New York, Harko has sufficient minimum contacts with the United States for this Court to exercise personal jurisdiction over it." (citation omitted)); *Bickerton v. Bozel S.A. (In re Bozel S.A.),* 434 B.R. 86, 98 (Bankr.S.D.N.Y.2010) (holding that the court had personal jurisdiction over a defendant who "has purposefully availed himself of the privilege of conducting business in the U.S."); *Enron Corp. v. Arora (In re Enron Corp.),* 316 B.R. 434, 446 (Bankr.S.D.N.Y.2004) ("The federal 'minimum contacts' test is also valid for Staley ... because ... he admits that he is a resident and an active registered voter of Houston, Texas....").

For reasons that numerous other courts have thoroughly explained in decisions the Qureshi Defendants failed to cite—including several decisions issued by the Sixth Circuit Court of Appeals—minimum contacts with the United States, rather than with the forum state, are sufficient for the purpose of establishing personal jurisdiction over a defendant when the defendant is served pursuant to a provision providing for nationwide service of process. *See Rieser v. Milford* (In re Chari), 276 B.R. 206, 210 (Bankr.S.D.Ohio

2002) ("Like a majority of the circuits, the Sixth Circuit holds that when a federal court sitting with federal question jurisdiction exercises personal jurisdiction pursuant to a national service of process provision, its jurisdiction is nationwide and it need not rely on a forum state's long-arm statute to establish extra-territorial jurisdiction outside the forum state." (citing *Med. Mut. of Ohio v. deSoto,* 245 F.3d 561, 566–67 (6th Cir.2001))). In *Medical Mutual of Ohio,* the Sixth Circuit held, in a case decided under the Employee Retirement Income Security Act ("ERISA"), that "when a federal court exercises jurisdiction pursuant to a national service of process provision, it is exercising jurisdiction for the territory of the United States and the individual liberty concern is whether the individual over which the court is exercising jurisdiction has sufficient minimum contacts with the United States." *Med. Mut.,* 245 F.3d at 567–68. *See also United Liberty Life Ins. Co. v. Ryan,* 985 F.2d 1320, 1330 (6th Cir.1993) (holding that the court had personal jurisdiction as a result of nationwide service of process under the federal securities laws); *Haile v. Henderson Nat'l Bank,* 657 F.2d 816, 824–26 (6th Cir.1981) (holding that the court had personal jurisdiction as a result of nationwide service of process under federal law providing for appointment of a receiver in a proceeding in district court); *Jones v. Lundin (In re NATCO, Inc.),* No. 09–5047, 2009 WL 5101912, at *3 (Bankr. E.D.Tenn. Dec. 17, 2009) ("Although the three Sixth Circuit cases cited above pertained to nationwide service of process provisions other than [the Bankruptcy Rule providing for nationwide service of process], this court, as well as others within the circuit, has previously recognized their equal applicability to the bankruptcy service provision."). *See also Bozel,* 434 B.R. at 99 ("[I]t is well established that in the context of bankruptcy proceedings, the

minimum contacts analysis should evaluate the defendant's contacts with the United States as a whole, not merely contacts with the forum state. Thus, [the defendant's] contention that he has insufficient contacts with the state of New York, ignoring contacts in Florida, fails to apply the appropriate ... legal standard." (citations omitted)); *Enron Corp.*, 316 B.R. at 446 ("Although [the defendant] ... might not have the requisite minimum contacts with New York, he did not argue that he was improperly served and he clearly has sufficient contacts with the United States for the Court to exercise personal jurisdiction over him pursuant to Bankruptcy Rule 7004(f).");[13] *GEX Ky., Inc. v. Wolf Creek Collieries Co. (In re GEX Ky., Inc.)*, 85 B.R. 431, 434 (Bankr.N.D.Ohio 1987) ("[Defendants] also assert that this court lacks personal jurisdiction over them due to the fact they have no minimum contacts with this state or this bankruptcy court. It is, of course, a well-established principle that the bankruptcy court is endowed with in personam jurisdiction for litigating all matters which arise in bankruptcy." (citation omitted)); *Stewart v. Strasburger (In re Astrocade, Inc.)*, 79 B.R. 983, 985 (Bankr.S.D.Ohio 1987) ("[T]he district court, and its bankruptcy court units, have jurisdiction that extends nationwide over non-resident defendants in any 'related to' proceeding despite a lack of 'minimum

contacts' with the forum in which the district or bankruptcy court is located.").[14]

Here, the Debtor attempted to serve summonses on the Qureshi Defendants (as well as the other Defendants) pursuant to a rule providing for nationwide service of process. *See* Fed. R. Bankr.P. 7004(b) ("[S]ervice may be made within the United States by first class mail postage prepaid...."); Fed. R. Bankr.P. 7004(d) ("The summons and complaint and all other process except a subpoena may be served anywhere in the United States."). For the reasons explained later in this opinion, those summonses will need to be reissued and re-served on the Qureshi Defendants. Once that happens, however, a lack of jurisdiction under Ohio's long-arm statute will present no impediment to the Court's exercise of personal jurisdiction over the Qureshi Defendants.

 Nor will due process. Under the Judicial Code, with limited exceptions not applicable here, an adversary proceeding over which a bankruptcy court has either core jurisdiction or related-to jurisdiction may be commenced in the district in which the debtor's bankruptcy case is pending, *see* 28 U.S.C. § 1409(a), and there is "nothing fundamentally unfair in permitting" the proceeding to be brought in that district despite the possibility that doing so

---

**13.** Bankruptcy Rule 7004(f) provides as follows:

> If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service in accordance with this rule or the subdivisions of Rule 4 F.R.Civ.P. made applicable by these rules is effective to establish personal jurisdiction over the person of any defendant with respect to a case under the Code or a civil proceeding arising under the Code, or arising in or related to a case under the Code.

Fed. R. Bankr.P. 7004(f).

**14.** As the Sixth Circuit itself has noted, "it is not universally accepted by the courts of appeals that a nationwide service of process provision suffices for personal jurisdiction." *NGS Am., Inc. v. Jefferson*, 218 F.3d 519, 524 n. 5 (6th Cir.2000) ("NGS cites [a case] as evidence that the Tenth Circuit has adopted the national contacts test. However, that circuit recently repudiated that very proposition and held that the Fifth Amendment requires more. Moreover, the Eighth Circuit has implied that ERISA's nationwide service of process provision would not establish personal jurisdiction in circumstances similar to this case." (citation omitted)).

may be "inconvenient to the defendants." *Med. Mut.*, 245 F.3d at 568 n. 4 (construing personal jurisdiction under ERISA). In the bankruptcy context Congress has, as with ERISA, balanced the interests of the various parties and has permitted litigation to be commenced in a centralized forum—under ERISA, where the plan is located and in bankruptcy cases where the debtor's case is pending.[15] *Id.* This is not a case in which the defendants point to their connections to some other country and allege a lack of minimum contacts with the United States. The Court's exercise of personal jurisdiction over the Defendants accordingly is not "unreasonable or unfair and meets the standards [of due process]." *Med. Mut.*, 245 F.3d at 568 n. 4. The Court, therefore, may exercise personal jurisdiction over the Defendants once they have received sufficient service of process.

## C. Process and Service of Process upon the Qureshi Defendants

### 1. Insufficiency of Process and Service of Process

The Qureshi Defendants rely on the premise that "service of process upon any defendant over whom the court cannot exercise personal jurisdiction is defective as a matter of law[,]" Qureshi Motion at 13, in support of their argument that service of process on them was insufficient. *Id.* This argument is unavailing for the Qureshi Defendants because, as discussed above, the Court may exercise personal jurisdiction over them once they receive sufficient service of process pursuant to the provision for nationwide service of process set forth in Bankruptcy Rule 7004.[16]

 Insufficient process is a defense that can be asserted by motion under Civil Rule 12(b)(4). Although they could have done so in the Qureshi Motion or in a reply to the Combined Memorandum, the Qureshi Defendants have not supported their allegation of insufficient process with details regarding the manner in which the process served on them was insufficient. They should have done so if they intended to contest insufficiency of process. "A party objecting to the sufficiency of process under Rule 12(b)(4) 'must identify substantive deficiencies in the summons, complaint or accompanying documentation.'" *Fly Brazil Grp., Inc. v. Gov't of Gabon, Africa*, 709 F.Supp.2d 1274, 1279 (S.D.Fla.2010) (quoting *Hilaturas Miel, S.L. v. Republic of Iraq*, 573 F.Supp.2d 781, 796 (S.D.N.Y.2008)). *See also McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir.1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (internal quotation marks omitted)); *Chari*, 276 B.R. at 210 ("The court begins by reminding the [defendants] that it does

---

15. Exceptions to the general venue rule applicable in bankruptcy cases exist for actions by trustees to recover money judgments or property of a value falling below a specified de minimis threshold and actions by trustees based on claims arising after the commencement of the bankruptcy case from the operation of the debtor's business. *See* 28 U.S.C. § 1409(b) & (d). Neither exception applies here.

16. Each of the Doukas Defendants waived service of process. *See* Doc. 22 (R.P.M. Recoveries, Inc.); Doc. 23 (Nemesis); Doc. 24 (Doukas); and Doc. 25 (Quick Capital). Although Nemesis filed a waiver of service of process with respect to BMAQ (Doc. 21), GMAQ (Doc. 27) and FLOVEST (Doc. 28), which are the Bavelis–Qureshi LLCs, it did so only on behalf of itself, and the current owner(s) of the other one-half interests in the Bavelis–Qureshi LLCs did not agree to waive service. *See* Qureshi Motion at 13.

not have a duty to research and construct legal arguments available to them. Instead, arguments suggested by the [defendants] within the caption of their motion should be fully addressed and analyzed by them within the supporting memorandum." (citation omitted)).

■ Nonetheless, the Court is not required to deem the process and service of process arguments waived. *See Hudgens v. Wexler & Wexler,* 391 F.Supp.2d 634, 643 (N.D.Ill.2005) ("Rather than use its discretion to deem the entirety of Plaintiff's ... arguments waived as a matter of course however, the Court will consider Plaintiff's arguments to the extent that the Court is able to discern them." (citations omitted)). And the Court will not deem those arguments waived here for several reasons. First, although they did so without providing details of the deficiencies, the Qureshi Defendants raised the insufficiency of process issue, *see* Qureshi Motion at 1 ("there exists insufficiency of process"), as well as the service of process issue. Indeed, unless the Qureshi Defendants believed that they were not properly served pursuant to Bankruptcy Rule 7004, their failure to address the case law discussed above regarding nationwide service of process, while still not understandable, would be entirely inexplicable. Second, the Debtor as the plaintiff "bears the burden of perfecting service of process and showing that proper service was made." *Sawyer v. Lexington–Fayette Urban Cnty. Gov't,* 18 Fed.Appx. 285, 287 (6th Cir. 2001). Third, as discussed further below in section V.C.2 of this opinion, because the Qureshi Defendants asserted insufficient process and service of process, unless the Debtor serves sufficient process on the Qureshi Defendants, the Court will lack personal jurisdiction over them. The Court, therefore, will fully address the pro-

cess and service of process issues despite the Qureshi Defendants' failure to do so.

■ A motion based on insufficiency of process typically relates to the form of the summons or to its contents rather than to the manner of its service. *See Majewski v. Highland Bank and Granite,* No. 09–3063, 2010 WL 681320, at *2 (D.Minn. Feb. 24, 2010); *Teligent, Inc. v. Banda 26, S.A. (In re Teligent, Inc.),* No. 03–3577, 2004 WL 724945, at *2 (Bankr.S.D.N.Y. Mar. 30, 2004). So the Qureshi Defendants' allegation of insufficiency of process caused the Court to review each summons served by the Debtor. Each summons identifies the "Defendant" as "Ted Doukas, et al." *See* Docs. 30–41. This was insufficient with respect to the Defendants who are not named in the summonses (*i.e.,* the Defendants other than Doukas, including the Qureshi Defendants). *See* Fed. R.Civ.P. 4(a)(1)(A) & (B) ("A summons must ... name the court and the parties; [and] be directed to the defendant[.]"); *Estate of Newton v. Grandstaff,* No. 3:10–CV–0809–L, 2010 WL 4628055, at *4 (N.D.Tex. Nov. 3, 2010) ("In this case, Plaintiffs assert claims against both 'YMCA' and 'YMCA of Metropolitan Dallas.' ... [T]he court issued summons for Defendant 'YMCA,' but Plaintiffs never sought a summons against Defendant YMCA–MD. Since no summons has been issued to YMCA–MD in compliance with Rule 4(a)(1)(A) and (B), process is therefore insufficient...."); *Imperial v. City of San Francisco,* No. 08–05644 CW, 2010 WL 1572760, at *1 (N.D.Cal. Apr. 20, 2010) ("Rule 4 requires a plaintiff to obtain a summons that names each defendant and to serve it along with a copy of the complaint on each defendant.... [N]o summons issued naming Defendant Ramsey.... Although Defendant Ramsey acknowledges that he received Plaintiff's [second amended complaint], this does not

satisfy the requirements of Rule 4."). Although this may appear to be a hypertechnical requirement, as explained further below in section V.C.2, it is consistent with Sixth Circuit law.

 Where, as here, the insufficiency in a summons arises from the failure to name the defendant, the summons "could be challenged under [Civil] Rule 12(b)(4) on the theory that the summons does not properly contain the names of the parties, or under [Civil] Rule 12(b)(5) [relating to insufficient service of process] on the ground that the wrong party—a party not named in the summons—has been served." *Gartin v. ParPharm. Cos., Inc.*, 289 Fed. Appx. 688, 691 n. 3 (5th Cir.2008). In other words, a defendant who is not named in the summons has not effectively been served and the service of process on that defendant, as well as the process itself, is therefore insufficient. The Court accordingly concludes that the failure to specifically name each of the Qureshi Defendants in a summons resulted in an insufficiency in process under Civil Rule 12(b)(4) as well as an insufficiency in the service of process under Civil Rule 12(b)(5). The Court will discuss the ramifications of those deficiencies after reviewing the attempted service of process on the Qureshi Defendants in more detail.

Both Qureshi (Doc. 57)[17] and Rab (Doc. 58) were served with a summons and a copy of the Complaint pursuant to Bankruptcy Rule 7004(b)(1) by regular, first class United States mail postage prepaid at 4800 N. Federal Highway, Suite 200E, Boca Raton, FL 33431. Under Bankruptcy Rule 7004(b)(1), such service is sufficient if 4800 N. Federal Highway is the address for Qureshi's and Rab's "dwelling house or usual place of abode or . . . the place where the individual regularly conducts a business or profession." Fed. R. Bankr.P. 7004(b)(1). During a hearing held on November 23, 2010 on the Debtor's request for a preliminary injunction (which was resolved by an agreed order), counsel for Qureshi stated that 4800 N. Federal Highway is the location of Qureshi's office. In addition, Rab is the registered agent of FLS and in that capacity was served with a summons and a copy of the Complaint (*see* Doc. 50) at the 4800 N. Federal Highway address. Accordingly, Qureshi and Rab would have been properly served had they been named in the summonses sent to them.

 As just noted, FLS, a Florida limited liability company, was served with a summons and a copy of the Complaint (*see* Doc. 50) by regular, first class United States mail postage prepaid c/o Masroor Rab, Registered Agent at the 4800 N. Federal Highway address. Similarly, BMAQ (Doc. 48), BNK (Doc. 49), FLOVEST (Doc. 51) and GMAQ (Doc. 52)—all of which are Florida limited liability companies—were served with summonses and copies of the Complaint by regular, first class United States mail postage prepaid addressed c/o the Newmark Law Firm, Registered Agent, 2650 West State Road 84, 101C, Fort Lauderdale, FL 33312. Bankruptcy Rule 7004(b)(3) requires that service "[u]pon a domestic or foreign corporation or upon a partnership or other unincorporated association [be made] by mailing a copy of the summons and complaint to the attention of an officer, a managing or general agent, or *to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant.*"

17. The document numbers referenced in this part of the opinion refer to the certificates of service of the summonses filed by the Debtor with respect to the Qureshi Defendants.

Fed. R. Bankr.P. 7004(b)(3) (emphasis added). The Florida statute permitting service of process on a limited liability company to be made upon the company's registered agent does not require that a copy also be mailed to the defendant. *See* Fla. Stat. Ann. § 608.463(1)(b) ("Process against a limited liability company may be served ... [u]pon the registered agent at the agent's street address."). The service of process on FLS, BMAQ, BNK, FLO-VEST and GMAQ through their registered agent, therefore, complied with Bankruptcy Rule 7004(b)(3) and would have been sufficient had they been properly named in the summonses sent to the registered agent.

The Debtor served MAQ Management, *LLC* (Docs. 53 & 54)—rather than Defendant MAQ Management, *Inc.*—pursuant to Bankruptcy Rule 7004(b)(3) by regular, first class United States mail, postage prepaid, at the 4800 N. Federal Highway address. Because the Defendant named in the Complaint, MAQ Management, Inc., is a corporation, the summons and complaint sent to that address should have been directed "to the attention of an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process...." Fed. R. Bankr.P. 7004(b)(3). But the Debtor served only "MAQ Management, LLC"— not an officer, managing or general agent

or statutory agent—at the 4800 N. Federal Highway address. The Debtor, however, also served "MAQ Management, LLC c/o Tracy B. Newmark, Esq., Registered Agent, 2650 West State Road 84, 101C Fort Lauderdale, FL 33312." Newmark is the registered agent for MAQ Management, so service of process on it would have been effective by virtue of the service on Newmark had MAQ Management been properly named in the summons.[18]

### 2. Consequences of Insufficient Process and Service of Process

"Due process requires proper service of process in order to obtain in personam jurisdiction." *Friedman v. Estate of Presser,* 929 F.2d 1151, 1156 (6th Cir.1991) (internal quotation marks omitted). The sufficiency of process and service of process are relevant to the Court's exercise of personal jurisdiction despite the actual knowledge that the Qureshi Defendants have of this adversary proceeding. Although some courts construe the service requirements for a summons liberally and require only substantial compliance with those requirements if the defendant obtains actual notice of the lawsuit,[19] the Court concludes that the Sixth Circuit would require plaintiffs to strictly comply with the applicable service requirements despite any actual notice the defendants

---

18. There are, perhaps, other issues the Debtor needs to address when it corrects the deficiencies in the summonses. For example, in addition to the fact that the MAQ Management that is one of the Defendants in this adversary proceeding is MAQ Management, Inc., not MAQ Management, LLC, the Debtor also served Qureshi Family Investments, LLC (Doc. 56) (through its registered agent, Newmark) rather than the entity named in the Complaint, which is Qureshi Family, LLC.

19. *See Team Enters., LLC v. W. Inv. Real Estate Trust,* No. CV F 08–1050 LJO SMS, 2008 WL 4367560, at *3 (E.D.Cal. Sept.23, 2008)

("As long as the defendant receives actual notice of the lawsuit, substantial compliance with the Code provisions governing service of summons will generally be held sufficient."); *Wallace v. Shapiro (In re Shapiro),* 265 B.R. 373, 378 (Bankr.E.D.N.Y.2001) ("[I]n making a determination as to whether service of process is defective, the Court must keep in mind that the standards for service on individuals and corporations are to be liberally construed to further the purpose of finding personal jurisdiction in cases in which the party has received actual notice." (internal quotation marks omitted)).

have of the litigation. *See Friedman,* 929 F.2d at 1156 ("Due to the integral relationship between service of process and due process requirements, we find that the district court erred in its determination that actual knowledge of the action cured a technically defective service of process. In short, the requirement of proper service of process is not some mindless technicality." (citations and internal quotation marks omitted)). A recent decision relied on *Friedman* to conclude that "Sixth Circuit precedent suggests that in cases of defective service of process, the fact that a defendant may have actual notice of an action is irrelevant." *PNC Mortg. v. Rhiel,* No. 2:10–CV–578, 2011 WL 1043949, at *5 (S.D.Ohio Mar. 18, 2011). In *PNC Mortgage,* the District Court construed Bankruptcy Rule 7004(h), which requires, subject to certain exceptions not applicable in that case, service of process on an insured depository institution to "be made by certified mail addressed to an officer of the institution[.]" Fed. R. Bankr.P. 7004(h). The District Court required the plaintiff to "strictly comply" with that service requirement and concluded that the plaintiff had failed to do so where, rather than directing the process to the attention of an officer, she had sent it by certified mail to the attention of an "Officer, Managing or General Agent[.]" *PNC Mortg.,* 2011 WL 1043949, at *4. *See also In re Barry,* 330 B.R. 28, 33 (Bankr.D.Mass. 2005) ("[A] moving party in a contested matter must comply strictly with Rule 7004...." (internal quotation marks omitted)); *Robinson v. Lefler (In re Lefler),* 319 B.R. 538, 541 (Bankr.E.D.Tenn.2004) ("Anything short of strict compliance with [the service-of-process requirement] is insufficient." (internal quotation marks omitted)).

 Although "[Civil] Rule 4 is a flexible rule which principally requires sufficient notice to the party of claims brought against it" and "a defendant's answer and appearance in an action should be enough to prevent any technical error in form from invalidating the process[,]" *Gottfried v. Frankel,* 818 F.2d 485, 493 (6th Cir.1987) (internal quotation marks omitted), the Qureshi Defendants have not filed an answer or appeared in this adversary proceeding—other than to contest venue and the Court's jurisdiction. The Qureshi Defendants' limited appearance has not resulted in their waiver of the defenses of insufficiency of process or service of process. *See Friedman,* 929 F.2d at 1157 n. 7 ("[A]s [the defendant's] *first* pleading specifically contested the insufficiency of service of process, it cannot be plausibly contended that he waived Rule 4's requirements and thereby submitted to the district court's jurisdiction."). Nor did the Defendants waive any defenses by entering into the Stipulated Order Granting Preliminary Injunctive Relief (Doc. 78), which expressly provides in paragraph 8 that "[n]othing contained in this agreement shall be considered to be a waiver of any of the claims or defenses raised by any of the Defendants to this Court's jurisdiction or venue, nor shall it be considered a waiver of any other raised claims or defenses of any of the Parties." *Cf. Armoloy Corp. v. Indus. Hard Chromium Co.,* No. 02 C 50071, 2002 WL 1284286, at *1 (N.D.Ill. June 5, 2002) ("Because IHC, through its own vice president, agreed to let this court enter a permanent injunction against it, it cannot complain this same court now lacks personal jurisdiction over it, especially when it did not reserve the right to contest that issue in the agreed order.").

 In other words, the Qureshi Defendants, who have not waived service of process, have done nothing that would permit the Court to disregard the insufficiency of the summonses served on them. The

Debtor, therefore, must address insufficiencies of process and any service deficiencies before the Court can proceed to adjudicate the merits of the Debtor's claims for relief. *See 3M Co. v. Darlet–Marchante–Technologie SA,* No. 08–827, 2009 WL 1228245, at *3 (D.Minn. May 5, 2009) ("Proper service is essential for a court to exercise jurisdiction over a party. Before resolving any matter on the merits, questions pertaining to the court's jurisdiction must be resolved." (citations omitted)).

■■■■ The need for the Debtor to correct the deficiencies in process and service of process raises the issue of whether the Debtor's doing so at this stage of the litigation would be timely. Civil Rule 4(m) governs the time limit for service of a complaint and summons. That rule states in pertinent part as follows:

> If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be effected within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. . . .

Fed.R.Civ.P. 4(m). As previously discussed, the Debtor failed to effectively serve the Qureshi Defendants, and the time limit for service imposed by Civil Rule 4(m)—120 days after the filing of the Complaint—has already expired. If the Debtor were to demonstrate good cause for his failure, the Court would be required to extend the time for service. *See* Fed.R.Civ.P. 4(m) (stating that "if the plaintiff shows good cause for the failure, the court *must* extend the time for service for an appropriate period" (emphasis added)). The Debtor, however, has not attempted to demonstrate good cause for his

failure to serve proper summonses on the Qureshi Defendants and may well have been unable to demonstrate good cause if he were required to do so. *See Friedman,* 929 F.2d at 1157 ("Legislative history provides only one example where an extension for good cause is appropriate—when the defendant intentionally evades service of process. Courts that have considered this issue . . . agree that counsel's inadvertent failure . . . to serve a defendant within the statutory period does not constitute good cause." (citation omitted)). The Court, therefore, has the discretion to dismiss this adversary proceeding without prejudice pursuant to Civil Rule 4(m).

■■■■ In addition, under Civil Rule 4(m), if a defendant is not timely served and no good cause is shown, the Court must either "dismiss the action without prejudice against that defendant *or order that service be made within a specified time.*" Fed R. Civ. P. 4(m) (emphasis added). So the Court has the discretion—even absent a showing of good cause—to order that service be made upon the Qureshi Defendants within a specified time. *See* Fed. R.Civ.P. 4(m) advisory committee's note (1993 Amendments) ("The new subdivision explicitly provides that the court shall allow additional time if there is good cause for the plaintiff's failure to effect service in the prescribed 120 days, and authorizes the court to relieve a plaintiff of the consequences of an application of this subdivision even if there is no good cause shown."); *Henderson v. United States,* 517 U.S. 654, 662–63, 116 S.Ct. 1638, 134 L.Ed.2d 880 (1996) ("[I]n [the] 1993 amendments to the [Civil] Rules, courts have been accorded discretion to enlarge the 120–day period even if there is no good cause shown." (internal quotation marks omitted)); *Johnson v. Hayden,* 229 F.3d 1152 (table), No. 99–3959, 2000 WL 1234354, at *3 n. 3 (6th Cir. Aug. 24, 2000)

("Rule 4(m) provides significantly more discretion for the district court to grant an extension of time to serve process than did the former Rule 4(j) and no longer requires district courts to find good cause before granting such an extension." (citations omitted)).[20]

 The Qureshi Defendants would not be prejudiced by allowing this adversary proceeding to proceed once the summonses are corrected and re-served; accordingly, dismissal based on defective process and service of process would be inappropriate. *See Gottfried,* 818 F.2d at 493 ("[D]ismissal is not appropriate unless the party has been prejudiced"). *See also Stafford v. Franklin Cnty., Ohio,* No. 2:04–CV–178, 2005 WL 1523369, at *3 (S.D.Ohio June 28, 2005) (holding that, in deciding whether to exercise its discretion under Civil Rule 4(m), the court would consider, among other things, whether an extension of time would prejudice the defendant— "other than the inherent 'prejudice' in having to defend the suit"). Moreover, the Court concludes that an extension of time is warranted given that the Debtor, although unsuccessful, made "good faith efforts at effecting proper service of process." Stafford, 2005 WL 1523369, at *3. Exercising the discretion to permit an extension of the time to effectuate service also is consistent with the principle that "disputes should be resolved on their merits rather than procedural or technical grounds." *Id.* Furthermore, the Debtor attempted service within the time limit set forth in Bankruptcy Rule 7004(m), and the Defendants filed the Motions within that time period. Alternatively, therefore, the

Court could conclude that the filing of the Motions "tolled the time period for effecting service of process[.]" *West v. Terry Bicycles, Inc.,* 230 F.3d 1382 (table), No. 99–1498, 2000 WL 152805, at *3 (Fed.Cir. Feb. 10, 2000). For all of these reasons, the Court will provide the Debtor 30 days after the entry of this opinion and order to properly serve a correct summons on each of the Qureshi Defendants.

**D. Venue of the Adversary Proceeding**

 Alleging improper venue, the Defendants also move for dismissal pursuant to Civil Rule 12(b)(3). The Debtor has the burden—which for the reasons set forth below the Court concludes he has met—of establishing proper venue. *See Ring v. Roto–Rooter Servs. Co.,* No. 1:10–cv–179, 2010 WL 3825390, at *3 (S.D.Ohio Sept.28, 2010). As with the issue of personal jurisdiction, a court "may hold an evidentiary hearing, or alternatively, may determine a venue motion without a hearing on the basis of the affidavits alone." *Id.* "If the plaintiff presents a prima facie case that venue is proper, after reading the pleadings and affidavits in the light most favorable to the plaintiff, the defendant's motion will be denied." *Id.* (internal quotation marks omitted). But "if the written submissions raise disputed issues of fact or seem to require determinations of credibility, the court retains the power to order an evidentiary hearing." *Id.* (internal quotation marks omitted).

Once again, no evidentiary hearing is necessary. The Defendants' position is that the Southern District of Ohio is an

---

**20.** Unlike the advisory committee's note, Civil Rule 4(m) does not explicitly state that a court may extend the time for service even if there is no good cause shown. It is perhaps for that reason that, even after the 1993 amendments to Civil Rule 4(m), some courts have suggested that good cause continues to be

required for an extension to be granted. *See, e.g., Barham v. Taylor (In re Taylor),* 07–00037, 2007 WL 3307008, at *4 (Bankr. N.D.Ala. Nov.5, 2007); *Rockstone Capital, LLC v. Walker–Thomas Furniture Co. (In re Smith),* No. 04–10457, 2006 WL 1234965, at *3 n. 7 (Bankr.D.C. Feb. 27, 2006).

improper venue based on the limited connections that both they and the events leading to the commencement of the adversary proceeding have with this district, *see* Qureshi Motion at 14; Doukas Motion at 4, and the Court will assume for the purposes of this opinion that those connections are as limited as the Defendants represent them to be. But that assumption is unavailing for the Defendants because the connections that they and the events precipitating the adversary proceeding have—or do not have—with the Southern District of Ohio are entirely irrelevant to the issue of whether venue is proper here. And, after considering the facts that are relevant, the Court must decide the venue issue in favor of the Debtor.

### 1. Venue of the Debtor's Case

What is relevant to the issue of whether venue of this adversary proceeding is proper here in the first instance is that the Debtor commenced his Chapter 11 case in the Southern District of Ohio. Venue of the case "is presumed to be proper [here], and the party challenging venue bears the burden of establishing by a preponderance of the evidence that the case was incorrectly venued." *In re Peachtree Lane Assocs., Ltd.*, 150 F.3d 788, 792 (7th Cir.1998). The Defendants have not even filed motions to transfer the venue of the Debtor's bankruptcy case, let alone carried their burden of establishing that venue of the Debtor's case is improper in the Southern District of Ohio. And, because "improper venue of the bankruptcy case can be waived by failure to make a timely challenge, the court is not required to determine that venue of the bankruptcy case is correct [but instead] can treat it as correct since it has not been challenged." *York v. Bank of Am. (In re York)*, 291 B.R. 806, 810 (Bankr.E.D.Tenn.2003). Accordingly, the Court will treat the venue of

the Debtor's case as correct in the Southern District of Ohio based on the failure by the Defendants or any other party in interest to object at this advanced stage of the case.

Indeed, the Court could have held that the Defendants waived any objections they might have had to the venue of the Debtor's case even if the case had been improperly venued in the Southern District of Ohio. Section 1406 of the Judicial Code "applies to [the transfer of] cases, including bankruptcy cases, filed in an improper venue[.]" *Thompson v. Greenwood*, 507 F.3d 416, 424 (6th Cir.2007). And section 1406(b) of the Judicial Code states that "[n]othing in this chapter shall impair the jurisdiction of a district court of any matter involving a party who does not interpose timely and sufficient objection to the venue." 28 U.S.C. § 1406(b). Thus, even if the Debtor's bankruptcy case were improperly venued, the Court could find that the Defendants have not interposed a timely and sufficient objection to venue of the Debtor's case and accordingly have waived that objection. *See In re Berryhill*, 182 B.R. 29, 31 (Bankr.W.D.Tenn. 1995) ("If no objection to venue [of an improperly venued bankruptcy case] is filed by a party in interest, improper venue may be waived by the parties."); Fed. R. Bankr.P. 1014(a) advisory committee's note (1987 Amendments) ("[A reference to] [d]ismissal of a case commenced in the improper district as authorized by 28 U.S.C. § 1406 has been added to the rule. If a timely motion to dismiss for improper venue is not filed, the right to object to venue is waived.").

Moreover, even if the Defendants had not waived their objections to the venue of the Debtor's case, the Court almost certainly would have held that venue is proper in the Southern District of Ohio. An

explanation of why this is so is warranted given the fact that the pendency of the Debtor's bankruptcy case in this district is the linchpin of the Court's venue analysis with respect to the adversary proceeding.[21]

 With respect to venue of a bankruptcy case, § 1408(1) of the Judicial Code provides as follows:

> [A] case under title 11 may be commenced in the district court for the district—(1) in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity that is the subject of such case have been located for the one hundred and eighty days immediately preceding such commencement, or for a longer portion of such one-hundred-and-eighty-day period than the domicile, residence, or principal place of business, in the United States, or principal assets in the Unit-

ed States, of such person were located in any other district[.]

28 U.S.C. § 1408(1). Because the four grounds for venue are set forth in the alternative, "[i]f it is established that the Debtor meets any *one* of the four tests (domicile, residence, principal place of business or principal assets), venue is proper in [this district]." *In re Miller,* 433 B.R. 205, 211 (Bankr.W.D.Mich.2010). And, although the Defendants appear to question whether the Debtor's residence and domicile are in the Southern District of Ohio,[22] they do not contend that his principal place of business or his principal assets in the United States were located somewhere other than in the Southern District of Ohio for the 180 days immediately preceding the Petition Date.

 Moreover, had the Defendants contested the venue of the Debtor's case, the Court likely would have found that venue of the Debtor's case is proper in the

---

21. Moreover, there is authority supporting the proposition that a bankruptcy court may transfer or dismiss a case for improper venue sua sponte. *See In re Langston,* 291 B.R. 872, 875 (Bankr.N.D.Ala.2003). For these reasons, despite the Defendants not having sought to dismiss or transfer the Debtor's bankruptcy case based on improper venue, the Court will conduct a relatively lengthy analysis of the appropriateness of the Debtor's case having been filed in this district in the first instance and its continuing to remain *pending* here.

22. *See* Qureshi Motion at 3; Doukas Motion at 3. "[T]he location of a person's domicile at any given time is a *question of intent:* what is the fixed location to which he intends to return when he is elsewhere?" *Miller,* 433 B.R. at 212 (internal quotation marks omitted). Each debtor will have only one domicile, *see id.,* and the Debtor concedes that his is Florida. *See* Combined Memorandum at 4. Although he suggests that he has a residence in Ohio for venue purposes, *see id.,* and the Debtor indeed owns residential real property in Ohio where he apparently stays at least part of the year, he also owns such property in Florida. It is true that a person may have

more than one residence, *see Miller,* 433 B.R. at 212, but the phrase "longer than" used in 28 U.S.C. § 1408(1) means that "only one such residence may qualify for the purpose of establishing venue under 28 U.S.C. § 1408(1)." *HSBC Bank USA v. Handel (In re Handel),* 253 B.R. 308, 310 (1st Cir. BAP 2000). And the residence that qualifies is the one where the debtor spent the majority of the 180 days prior to the bankruptcy filing. *See Handel,* 253 B.R. at 310–11 (holding the debtor's residence under § 1408 to be New York because he spent the majority of the 180 days prior to the commencement of the bankruptcy case in New York); *In re Frame,* 120 B.R. 718, 723–24 (Bankr.S.D.N.Y.1990) (holding that the debtor's residence for purposes of venue was Houston because the debtor spent the longer of the 180 days prior to the commencement of the bankruptcy case in that city). The Debtor has not contended or submitted any affidavit testimony to establish that the real property in Ohio has been his residence for a longer portion of the 180–day period preceding the Petition Date than has his residence in Florida.

Southern District of Ohio based on the location of the Debtor's principal assets. The Brokerage Account is located where the account was opened. *See In re Iglesias,* 226 B.R. 721, 723 (Bankr.S.D.Fla.1998) (holding that the debtor's bank account was located in the district where the bank at which the account was opened was physically located). And there is no question that the Debtor opened the Brokerage Account in the Southern District of Ohio. Considering that the value of the Brokerage Account alone causes more than 50% of the Debtor's assets to be located in the Southern District of Ohio, it appears that, as an individual debtor, the Debtor's principal assets in the United States were located in the Southern District of Ohio during the greater part of the 180 days prior to the Petition Date. *See In re Shelton,* No. 01–20655, 2001 WL 35814440, at *5 n. 15 (Bankr.D.Idaho Oct. 12, 2001) ("One might theorize situations where a particular asset, though not constituting the majority of dollar value of the debtors' estate, was of a chief, primary or 'principal' character. But the more logical approach, and less strained reading of the statute, requires a simple determination of where the greater dollar value of all property of the estate is located.").[23] Thus, given that the Debtor's principal assets in the United States have been located in the Southern District of Ohio for the 180 days immediately preceding the Petition Date, venue of the Debtor's case is proper here.

### 2. Transfer of the Debtor's Case

■■■ The Defendants have not requested transfer of the Debtor's bankruptcy case. As explained further below, however, there is a strong presumption in favor of an adversary proceeding being heard in the district where the debtor's bankruptcy case is pending. And, as noted above, certain courts have held that bankruptcy courts have the authority to transfer the venue of a debtor's case *sua sponte. See, e.g., In re B.L. of Miami, Inc.,* 294 B.R. 325, 330 (Bankr.D.Nev. 2003). Without reaching the issue of whether it would have the authority to order a transfer of a bankruptcy case *sua sponte,* the Court will address why such a transfer would not be appropriate here even if the Court had the authority. The decision to transfer a case is "within the court's discretion[,]" should "not [ ] be taken lightly" and should be made by giving "great weight" to the Debtor's choice of a proper venue. *In re Enron Corp.,* 274 B.R. 327, 342 (Bankr.S.D.N.Y.2002).

■■■ A bankruptcy court may transfer a properly venued case to "a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412. *See also* Fed. R. Bankr.P. 1014(a)(1); *Enron Corp.,* 274 B.R. at 342 ("The bankruptcy court's authority to exercise the district court's power to transfer a case under 28 U.S.C. § 1412 stems from the district court's referral of the case to the bankruptcy court pursuant to 28 U.S.C. § 157(a)"). In considering whether the transfer of a debtor's case would be in the convenience of the parties, courts have considered, among other factors, "1. the proximity of creditors of every kind to the Court, 2. [t]he proximity of the debtor to the Court; 3. [t]he proximity of the witnesses necessary to the administration of the estate; 4. [t]he location of the assets; [and] 5. [t]he economic administration of the estate...." *In re*

---

**23.** The Court leaves for another day whether the analysis set forth in *Shelton* would apply to a corporation or other business association that argues that its principal assets are its operating assets and the value of those assets is less than 50% of the value of all of its assets.

*Enron Corp.*, 284 B.R. 376, 387 (Bankr. S.D.N.Y.2002) (footnote omitted). Of these factors, the one that receives the most weight is the economic administration of the estate. *Id.* Likewise, the efficient administration of the estate is an important factor in examining whether transfer of the case would promote the interest of justice. Other factors courts consider in examining the interest of justice include judicial economy, timeliness and fairness. *Id.*

On balance, the Court concludes that the transfer of the venue of the Debtor's case would not be appropriate. First, the most important factor—the economic and efficient administration of the Debtor's estate—weighs against transfer of the case. The Debtor's case has been pending in this Court since July 2010, the Court has become familiar with the parties and with the issues present in the Debtor's case. The Court has obtained that familiarity both in connection with this adversary proceeding as well as through several hearings and status conferences on other matters in the case. For example, it has held hearings in connection with the Fifth Third Motion, which was filed by a creditor that, together with its affiliates, holds claims in excess of $7.9 million. A transfer of a case such as this—in which the Debtor intends to reorganize rather than liquidate—would not serve the economic and efficient administration of the estate or the interest of justice. *See In re Vienna Park Props.*, 128 B.R. 373, 377–78 (Bankr. S.D.N.Y.1991) ("[T]his Court has gained such a familiarity with, and insight into, this case, that a transfer of venue would only thwart the efficient administration of the case and work an injustice in the case and to all parties involved.... A transfer of venue would have imposed on the new court the burdensome task of moving up along the 'learning curve' and would have

delayed the entire reorganization process. Ultimately, a delay in the reorganization process would not have worked in favor of the convenience of the parties or the interest of justice." (citations omitted)). *Cf. In re Dunmore Homes, Inc.*, 380 B.R. 663, 674 (Bankr.S.D.N.Y.2008) ("Given the Debtor's stated objective to sell all or parts of the company or its assets in an orderly wind down ... the learning curve is not a substantial deterrent to transferring the case.").

The Debtor has his principal assets, a business office and residential real property in the Southern District of Ohio; likewise, the other individuals responsible for the financial restructuring of the affairs of the Debtor and the development of a plan of reorganization—including the bankruptcy counsel and financial consulting firm that the Debtor retained with the Court's approval—are located in this district. Those facts further support a finding that the economic and efficient administration of the Debtor's estate would be served by retaining venue of the Debtor's case in the Southern District of Ohio. *See Enron*, 274 B.R. at 349.

The proximity of creditors to the Court also supports keeping the case in the Southern District of Ohio. "Consideration of the proximity and convenience of creditors must include the number of creditors as well as the amounts owed." *Dunmore*, 380 B.R. at 676. *See also Enron*, 274 B.R. at 345 ("In considering the proximity of creditors, this Court must examine both the number of creditors as well as the amount of claims held by such creditors.").

The claims bar date established by the Court in the Debtor's case passed on November 24, 2010. Of the 51 proofs of claim filed on the claims register, 27 claims were filed by banks (or their affiliates) having their main offices in the Southern District of Ohio (Fifth Third Bank, Huntington

Bank, Heartland Bank and Perpetual Federal Savings Bank), 12 claims were filed by persons or other entities located in the Southern District of Ohio who appear to have conducted business with or represented the Debtor (Univest Company, Doric Properties, Omega Properties, ABY Properties, Alfa Properties, Sanford Solomon, Pella Company, the Vakaleris Family Limited Partnership, Aristeidis Archontis, the Yessios Family Limited Partnership, FLOHIO and Kemp, Schaeffer & Rower Co., LPA). Four of the claims were filed by entities that regularly appear in bankruptcy cases in the Southern District of Ohio (Wells Fargo Home Mortgage, Chase Home Finance, LLC and the Internal Revenue Service), and three claims were filed by creditors who listed addresses on their proofs of claim that would place them in locations from which it is as convenient to travel (and perhaps more so) to the Southern District of Ohio than to the Southern District of Florida—DCFS USA LLC (Kentucky), Xenia Co. (Illinois) and Guzov Ofsink, LLC (New York). The creditors just mentioned collectively account for 46 of the 51 claims and over $32 million of the approximately $67 million of liquidated claims filed against the Debtor. By contrast, the creditors whose proofs of claim listed Florida addresses, together with approximate claim amounts, are Branch Banking and Trust Company ($13.3 million), First Southern Bank ($6.5 million), Independent Bankers' Bank of Florida ($1.2 million) and the Federal Deposit Insurance Corporation (unliquidated), for a total liquidated amount of $21 million.

The remaining proof of claim, in the amount of $14 million, was filed by Quick Capital, which is a New York corporation.

Other creditors located in the Southern District of Ohio who did not file proofs of claim (apparently because their claims were not identified as contingent, unliquidated or disputed and therefore did not need to file proofs of claim in order to receive any distribution to which they are entitled)[24] hold claims that aggregate approximately $2.8 million: First Bexley Bank; Genesis Properties; Magna National Financial, LLC; Pro–1, LLC; Riverfront Properties; Bason, Properties; Sfakianakis Family, LLC; Sofia Hondroulis; Stella Studer; Tina Manokas; Vasiliki Drake; and Viki Presock. Creditors who are in this same position who are located in districts that are as proximate to the Southern District of Ohio as they are to the Southern District of Florida—Stavros & Roula Tsirikolias (Illinois) and Lou Padula (California)—hold claims in the aggregate approximate amount of $1.1 million. By contrast, with the exception of a single secured creditor (Independent Bankers' Bank of Florida, which filed a proof of claim), each of the creditors (other than the Defendants) located in Florida whose claims were included on the Debtor's schedules were identified as holding claims that are contingent, unliquidated and/or disputed and therefore needed to file proofs of claim in order to receive any distribution to which they were entitled. Among those creditors, Branch Banking and Trust Company and First Southern

---

24. *See* Doc. 30 in Case No. 10–58583 (notice stating that "[i]f your claims [are] not listed at all [in the Debtor's schedules] or if your claim is listed as disputed, contingent, or unliquidated, then you must file a Proof of Claim by the deadline listed above or you may not be paid any money on your claims against the debtor in the bankruptcy case."). *See also* Bankruptcy Rule 3003(c)(2) ("Any creditor or equity security holder whose claim or interest is not scheduled or scheduled as disputed, contingent, or unliquidated shall file a proof of claim or interest within the time prescribed by subdivision (c)(3) of this rule; any creditor who fails to do so shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution.").

Bank, as noted previously, filed proofs of claim. The Defendants located in Florida who were included as creditors on the Debtor's schedules were all identified as holding contingent, unliquidated *and* disputed claims. Despite this, they chose not to file proofs of claim against the Debtor.

In sum, an analysis of the Debtor's claims register and schedules demonstrates that creditors who either are located in the Southern District of Ohio or in districts that are as proximate to this district as they are to the Southern District of Florida[25] (or who regularly appear in the Southern District of Ohio) hold over 90% in number and approximately 50% in amount of the claims filed or scheduled against the Debtor. These facts support retaining the venue of the case in the Southern District of Ohio. *See Enron Corp.*, 274 B.R. at 345 ("[W]hile some creditors would best be served by this bankruptcy case being located in Texas, for the remainder of creditors . . . Texas provides no better venue, and perhaps may be more inconvenient, than New York."); *Huntington Nat'l Bank v. Indus. Pollution Control, Inc. (In re Indus. Pollution Control, Inc.)*, 137 B.R. 176, 181 (Bankr.W.D.Pa. 1992) ("In balance, it appears that the present forum is more convenient than any other to the creditors."). *Cf. In re Reynolds*, 13 B.R. 658, 660 (Bankr.N.D.Ga.1981) (transferring the debtor's bankruptcy case to a district in Tennessee because "[i]t is not disputed that a greater percentage both in number and amount of the debtor's creditors are closer to Chattanooga than to Atlanta."). The Court, therefore, concludes that the proximity of creditors to the Court also supports keeping the case in the Southern District of Ohio.

The Debtor could have commenced his Chapter 11 case (and thus this adversary proceeding) in a bankruptcy court in Florida given his domicile in that state. If he had, the presumption would have been that the case and this adversary proceeding should have remained there. No doubt the Defendants would have preferred that venue rather than the Southern District of Ohio. But the Defendants' preference provides no basis for this Court to decline to exercise "its virtually unflagging obligation to exercise the jurisdiction granted to it by Congress." *Logan v. Credit Gen. Ins. Co. (In re PRS Ins. Grp., Inc.)*, 335 B.R. 77, 85 (Bankr.D.Del.2005). *See also Parrett v. Bank One, N.A. (In re Nat'l Century Fin. Enters., Inc., Inv. Litig.)*, 323 F.Supp.2d 861, 881 (S.D.Ohio 2004) ("With subject-matter jurisdiction established, this Court has a 'virtually unflagging obligation . . . to exercise the jurisdiction given [it].'" (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 821, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976))). Based on all of the foregoing, the Court concludes that venue of the Debtor's Chapter 11 case should remain in the Southern District of Ohio.

### 3. Ramifications for the Venue of the Adversary Proceeding

Venue of an adversary proceeding generally is proper in the district where the associated bankruptcy case is pending. *See* 28 U.S.C. § 1409(a) (subject to certain exceptions not applicable here, "a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending"); *Enron Corp. v. Dynegy Inc. (In re Enron Corp.)*, No. 01–16034, 2002 WL 32153911, at *1 (Bankr.S.D.N.Y. Apr. 12, 2002) ("Subject to the exceptions not relevant here, venue of adversary proceedings is always proper,

---

**25.** Because Quick Capital is a party to the Doukas Motion, the Court has not included Quick Capital in this category despite its incorporation in New York.

in the first instance, in the district court where the title 11 case is pending."). It is because venue of the Debtor's case is proper in the Southern District of Ohio that venue of this adversary proceeding is proper here in the first instance.

### E. Transfer of Venue of the Adversary Proceeding

This brings the Court to the issue of whether the adversary proceeding itself should remain in the Southern District of Ohio. The Defendants contend that, if this adversary proceeding is not dismissed, the Court should transfer it to another district pursuant to 28 U.S.C. § 1412.[26] The Qureshi Defendants request transfer of the entire adversary proceeding to the Southern District of Florida. *See* Qureshi Motion at 17. The Doukas Defendants request transfer of the portion of the Complaint related to the Quick Capital Lawsuit to the New York Federal Court and transfer of the balance of the adversary proceeding to the Southern District of Florida. *See* Doukas Motion at 7, 10–11.

 The Court begins the transfer analysis by recognizing that, in general, "[t]here is a strong presumption in favor of placing venue in the district where the bankruptcy proceedings are pending." *MD Acquisition, LLC v. Myers*, 2009 WL 466383, at *4 (S.D.Ohio Feb.23, 2009) (internal quotation marks omitted). *See also Manville Forest Prods. Corp.*, 896 F.2d at 1391 ("[T]he district in which the underly-

ing bankruptcy case is pending is presumed to be the appropriate district for hearing and determination of a proceeding in bankruptcy."); *Dwight v. Titlemax of Tenn., Inc.*, No. 1:09–CV–267, 2010 WL 330339, at *2 (E.D.Tenn. Jan. 21, 2010) (recognizing the strong presumption in favor of venue in the district where the debtor's bankruptcy case is pending); *HLI Creditor Trust v. Keller Rigging Constr., Inc. (In re Hayes Lemmerz Int'l Inc.)*, 312 B.R. 44, 46 (Bankr.D.Del.2004) (same); *Sudbury, Inc. v. Dlott (In re Sudbury, Inc.)*, 149 B.R. 489, 493 (Bankr.N.D.Ohio 1993) ("There is a general presumption that all matters involving a bankruptcy should be tried in the court in which the bankruptcy is pending." (internal quotation marks omitted)); *Nixon Mach. Co. v. Roy Energy, Inc. (In re Nixon Mach. Co.)*, 27 B.R. 871, 873 (Bankr.E.D.Tenn.1983) ("In a bankruptcy case, a paramount consideration is speedy and economic administration of the bankruptcy case. This consideration underlies the general rule that the court where the bankruptcy case is pending is the proper venue for all related proceedings within the court's jurisdiction.").

 The decision to transfer an adversary proceeding is discretionary and should be undertaken with caution given that "[t]ransfer is a cumbersome disruption of the Chapter 11 process." *Enron Corp. v. Arora (In re Enron Corp.)*, 317 B.R. 629, 638 (Bankr.S.D.N.Y.2004) (internal quotation marks omitted). Thus far,

**26.** There is a split of authority on the issue of whether § 1412 applies only to core proceedings, with 28 U.S.C. § 1404(a) instead applying to non-core matters. *See Dunlap v. Friedman's Inc.*, 331 B.R. 674, 677 (S.D.W.Va. 2005) (citing cases on both sides of the issue). The Court, though, need not decide that issue. Although there are differences between the two provisions— § 1404(a) refers to witnesses, § 1412 does not; § 1412 is clearly written in the disjunctive, § 1404(a) is not;

and only § 1404(a) requires that the court to which the transfer is made be one in which the action originally could have been commenced—for purposes of the analysis here the applicable section does not matter. *See Longhorn Partners Pipeline L.P. v. KM Liquids Terminals, L.L.C.*, 408 B.R. 90, 98 n. 3 (Bankr. S.D.Tex.2009) ("Considering the nearly identical language in § 1404(a) and § 1412, courts have generally applied the same analysis to both.").

the burden of proof has been on the Debtor, but the burden of proof on a motion to transfer venue lies with the Defendants as the movants, who must establish that the transfer is warranted by a preponderance of the evidence. *See id.* at 639. For the reasons set forth below, the Court concludes that the Defendants have failed to satisfy their burden.

Under 28 U.S.C. § 1412, "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." *See also* Fed. R. Bankr.P. 7087 ("On motion and after a hearing, the court may transfer an adversary proceeding or any part thereof to another district pursuant to 28 U.S.C. § 1412...."). Because § 1412 is written in the disjunctive, the Court may exercise its discretion to transfer an adversary proceeding if the transfer would either (1) be in the interest of justice or (2) serve the convenience of the parties. *Arora*, 317 B.R. at 637. In analyzing whether a transfer would be in the interest of justice, courts typically weigh the following factors:

1) whether transfer would promote the economic and efficient administration of the bankruptcy estate;

2) whether the interests of judicial economy would be served by the transfer;

3) whether the parties would be able to receive a fair trial in each of the possible venues;

4) whether either forum has an interest in having the controversy decided within its borders;

5) whether the enforceability of any judgment would be affected by the transfer; and

6) whether the plaintiff's original choice of forum should be disturbed.

*Id.* at 638–39. In analyzing the convenience of the parties, courts have considered the (1) location of the plaintiff and defendant, (2) ease of access to the necessary proof, (3) convenience of the witnesses and the parties and their relative physical and financial condition, (4) availability of the subpoena power for unwilling witnesses and (5) expense of obtaining unwilling witnesses. *Id.* at 639. For the reasons explained below, the Court concludes that, on balance, the factors to be considered in analyzing both the interest of justice and the convenience of the parties weigh against the transfer of this adversary proceeding to another district.

### 1. The Interest of Justice

In deciding whether the transfer of an adversary proceeding would be in the interest of justice, courts give the greatest weight to whether the proposed transfer would promote the economic and efficient administration of the bankruptcy estate. *See id.* at 640; *Gunner v. Anthony (In re Heritage Fin. Network, Inc.)*, 286 B.R. 318, 320 (Bankr.S.D.Ohio 2002) ("As for the interests of justice, nearly every case that has considered transfer of a bankruptcy proceeding has construed this phrase in section 1412 to give primacy to administrative matters affecting the estate." (internal quotation marks omitted)); *GEX Ky., Inc.*, 85 B.R. at 435 ("Of all the considerations the courts have weighed in this process, the most important one is whether the transfer would promote the economic and efficient administration of the estate." (internal quotations marks omitted)).

For several reasons, the Court concludes that transferring this adversary proceeding to another district would not promote the economic and efficient administration of the bankruptcy estate and also would not serve the interests of judicial economy. First, as with the transfer of the case, transfer of the adversary pro-

ceeding would not serve the efficient administration of the bankruptcy estate because this Court, unlike the New York Federal Court and the Florida State Court, has "developed a substantial 'learning curve'" with respect to all of the 2009 Transactions—rather than just the 2009 Transactions that are the subject of the actions pending before the Florida State Court and the New York Federal Court—and thus it would be "inappropriate to shift the burden of adjudicating the instant proceeding" to one of those other courts. *Manville Forest Prods. Corp.*, 896 F.2d at 1391. *See also NWL Holdings*, 2011 WL 748279, at *6 ("Maintaining this adversary proceeding in the same venue as the bankruptcy case would provide a more economical use of judicial resources than transferring this adversary proceeding to New York, because the Court is already familiar with the facts underlying the bankruptcy case.").

Furthermore, the Defendants' reliance on the pendency of the Quick Capital Lawsuit and the Florida Lawsuits to support their transfer argument is misplaced. The pendency of the Quick Capital and Florida Lawsuits provides no basis for the Court to find that the transfer would be in the interest of justice. As the background provided by the Court earlier in this opinion demonstrates, the Quick Capital Lawsuit relates only to the Quick Capital Note, not to the other counts against the Doukas Defendants. The Doukas Defendants contend that the causes of action asserted against them in the Complaint should have been raised as compulsory counterclaims in the Quick Capital Lawsuit. Even if that

is true—an issue the Court need not reach—the Debtor did not bring any such claims in the New York State Court and in fact, as explained further below, could not have done so with respect to claims that he is now bringing only in his capacity as debtor in possession. Moreover, the documents provided by the parties to this Court demonstrate that the Florida Lawsuits relate primarily, if not entirely, to FLOVEST, not to the other Bavelis–Qureshi LLCs. The other pending lawsuits, therefore, encompass only a portion of the claims asserted by the Debtor in this adversary proceeding.

In fact, this adversary proceeding is fundamentally different from the Quick Capital Lawsuit and the Florida Lawsuits or, for that matter, any action the Debtor conceivably could have brought outside of bankruptcy. The gravamen of the Debtor's Complaint is that the 2009 Transactions constitute fraudulent transfers or, in the instance of the Quick Capital Note, a fraudulently incurred obligation.[27] Prior to the Petition Date, creditors of the Debtor or of the other entities that made the allegedly fraudulent transfers, including FLOHIO, might have been able to bring such constructive fraudulent transfer actions. The Debtor, however, could not have brought them without filing a bankruptcy case. He has the right to bring the actions only because he is acting in his capacity as debtor in possession on behalf of the bankruptcy estate. *See Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery (In re Cybergenics Corp.)*, 226 F.3d 237, 241 (3d Cir.2000); *Bliss Techs., Inc.*, 307 B.R. at 604–05 ("In

---

**27.** During a hearing on a motion for relief from the automatic stay filed by Quick Capital (Doc. 186 in Case No. 10–58583), counsel for Quick Capital took the position that, although the actions asserted in this adversary proceeding pursuant to §§ 544(b) and 548 are core proceedings, the Quick Capital Note is not the subject of any of the counts of the Complaint that are brought pursuant to those sections of the Bankruptcy Code. As explained above, however, the Debtor seeks to avoid the Quick Capital Note as a fraudulently incurred obligation pursuant to §§ 544(b) and 548.

the absence of a bankruptcy ... a cause of action under Ohio's Uniform Fraudulent Transfer Act could be pursued only by a creditor of Debtor Bliss Technologies, not by Debtor itself.... It is only ... the Bankruptcy Code that permits a trustee/bankruptcy debtor-in-possession to pursue such an action." (citation omitted)).

This does not mean, however, that the Debtor is going to succeed. The merits of the adversary proceeding, including the fraudulent transfer actions, are for a later date. But, to the extent that the Debtor has the right to bring any fraudulent transfer actions, only the pendency of his bankruptcy case and the Bankruptcy Code afford him that right. Accordingly, the avoidance actions are appropriately determined in the district where the Debtor's bankruptcy case is pending and (unless the reference is withdrawn) by this Court as the bankruptcy court presiding over the Debtor's case. This is especially true where, as here, the ground for the Debtor's requested recovery—avoidance of allegedly fraudulent transfers—is primarily based on the Bankruptcy Code. So the factor to which the courts give the greatest weight in analyzing the interest of justice—whether the proposed transfer would promote the economic and efficient administration of the bankruptcy estate—counsels heavily against transfer of the core claims, as do the interests of judicial economy. Given the close connection between the core and non-core matters, both of those factors also lead the Court to conclude that the related, non-core matters should be decided by this Court as well.

The other factors to be considered when determining whether the interest of justice warrants transfer are either neutral or weigh against transfer. As the Court suggested earlier in this opinion, it has not prejudged the merits of the adversary proceeding, so there is no reason to believe

that the parties would be unable to receive a fair trial in this Court. Given that the Debtor's bankruptcy case is pending here (and properly so), the Southern District of Ohio has just as much an interest in having the controversy decided within its borders as does the Southern District of Florida or the Eastern District of New York. The Court finds that the enforceability of any judgment would not be affected whether a transfer occurs or not. Finally, the Court finds no good reason for disturbing the Debtor's choice of the Southern District of Ohio as the forum in which to assert the Bankruptcy Law Counts and the State Law Counts.

### 2. The Convenience of the Parties

Likewise, a consideration of the convenience of the parties supports the Court's decision to decline to transfer this adversary proceeding to another district. The Debtor has residential real property, a business office and his primary assets in the Southern District of Ohio, and has chosen this district as his forum. Thus, the Southern District of Ohio clearly is convenient for him. The Court has no doubt that it would be more convenient for most, if not all, of the Defendants to have this adversary proceeding heard in Florida or New York. But, as previously discussed, after balancing the interests of parties in bankruptcy cases, Congress has provided—with limited exceptions not applicable here—that adversary proceedings may be commenced in the district where the debtor's bankruptcy case is pending. *See* 28 U.S.C. § 1409(a). And the Defendants have not set forth in their affidavits or their other submissions to the Court anything suggesting that it would unduly inconvenience them to litigate this adversary proceeding here. The Court has no reason to believe that it would unduly prejudice them to present evidence on the issues to be decided in this adversary pro-

ceeding, including the issues that are relevant to the constructive fraudulent transfer claims. Among other things, these issues include whether a transfer of an interest of the Debtor in property occurred, whether the Debtor made any such transfer within the applicable look-back period, whether he received less than reasonably equivalent value in exchange for the transfer and whether he was insolvent. In fact, the Defendants have failed to identify any physical or financial conditions that would prevent them from adequately defending this adversary proceeding here.

 Moreover, because the parties' disputes currently are pending in both Florida and New York, it makes sense to centralize the litigation in the Southern District of Ohio, which is relatively accessible from both of the other states. *Cf. Post–Confirmation Trust v. Berry (In re Fleming Cos.),* 444 B.R. 127, 140 (Bankr. D.Del.2011) ("In addition, the underlying events leading to the Amended Complaint have taken place in many states...."). The convenience of the parties also would not be served because transfer would result in the Debtor "hav[ing] to hire another counsel, which would create an additional expense on the estate and ultimately deprive the creditors from additional recovery." *Hayes Lemmerz Int'l Inc.,* 312 B.R. at 47. Regarding the ease of access to the necessary proof, the Court would expect such proof to be partly documentary. To the extent that it is, the documents could be brought to the Southern District of Ohio without much difficulty. *See NWL Holdings,* 2011 WL 748279, at *5 ("In this case the location of books and records is not a significant factor due to the ease of transporting documents."). Part of the evidence also is likely to be elicited through testimony. In that regard, with respect to the convenience of the witnesses, although the Defendants point out that many of the witnesses are in Florida, "[t]he convenience of the witnesses is only a factor to the extent that the witnesses may actually be unavailable for trial in one of the fora [and] witnesses are presumed to be willing to testify in either forum despite the inconvenience that one of the forums would entail." *Hayes Lemmerz Int'l Inc.,* 312 B.R. at 47 (citation and internal quotation marks omitted). *See also NWL Holdings,* 2011 WL 748279, at *6 ("Harko asserts that because the Trustee may not have control over the Debtors' witnesses, they will either be unavailable or have to travel to Delaware, resulting in unnecessary expense. This factor, however, is limited to a showing that the witnesses are actually unavailable for trial in Delaware. Neither party has demonstrated that there are potential witnesses that will be unavailable for trial either in New York or Delaware. Thus, the Court finds this factor to be neutral." (citation omitted)). Here, the Defendants have not alleged that the witnesses are unavailable, unwilling or unable to testify in the Southern District of Ohio.

Finally, although the Qureshi Defendants base their request for a transfer in part on their assertion that courts located in Florida have personal jurisdiction over them, this Court also will have personal jurisdiction over the Qureshi Defendants once the Debtor completes service of process on them. For all of these reasons, the Court concludes that neither the convenience of the parties nor the interest of justice weighs in favor of a transfer of this adversary proceeding to another district.

## F. Mandatory Abstention

 The Defendants contend that mandatory abstention applies here—the Qureshi Defendants based on the Florida Lawsuits, *see* Qureshi Motion at 14, and the Doukas Defendants based on the Quick Capital Lawsuit. *See* Doukas Motion at 7.

For the reasons explained below, the Court finds that mandatory abstention does not apply to any of the claims for relief asserted in this adversary proceeding.

 Mandatory abstention is governed by 28 U.S.C. § 1334(c)(2), which provides as follows:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2). Based on this statute, the Sixth Circuit has held that "[f]or mandatory abstention to apply, a proceeding must: (1) be based on a state law claim or cause of action; (2) lack a federal jurisdictional basis absent the bankruptcy; (3) be commenced in a state forum of appropriate jurisdiction; (4) be capable of timely adjudication; and (5) be a non-core proceeding." *Lowenbraun*, 453 F.3d at 320.

## 1. The Bankruptcy Law Counts

 Under *Loewnbraun*, mandatory abstention applies, if at all, only to matters within the Court's non-core, related-to jurisdiction, not to matters within the Court's core jurisdiction that arise under the Bankruptcy Code. *See also Nat'l Century*, 323 F.Supp.2d at 874. The Court previously determined that the Bankruptcy Law Counts are core matters arising under the Bankruptcy Code. Mandatory abstention, therefore, does not apply to the Bankruptcy Law Counts.

 Further, contrary to the suggestion of the Doukas Defendants, the Court also need not abstain from adjudicating Count Three in favor of the Quick Capital Lawsuit. For the reasons previously discussed, Count Three is core in its entirety. But even if it were not, mandatory abstention nonetheless would not apply because, as explained below, the federal courts would have had jurisdiction over the Quick Capital Lawsuit absent the Debtor's bankruptcy. After its commencement in the New York State Court, the Quick Capital Lawsuit was removed by the Debtor to the New York Federal Court. *See* Notice of Removal filed with the New York Federal Court (copy attached as Exhibit A to Doc. 71).[28] The Quick Capital Lawsuit was removed by the Debtor before the Petition Date and accordingly was not removed pursuant to the bankruptcy-removal statute of 28 U.S.C. § 1452(a).[29] Rather, the

---

**28.** Although there is a split of authority on the issue, the Sixth Circuit has held that removal of an action pursuant to 28 U.S.C. § 1452 does not in and of itself make mandatory abstention inapplicable, even though removal means that no action remains pending in state court. *See Robinson v. Mich. Consol. Gas Co.*, 918 F.2d 579, 584 n. 3 (6th Cir.1990) ("The abstention provisions of 28 U.S.C. § 1334(c)(2) apply even though a case has been removed pursuant to 28 U.S.C. § 1452."); *Nat'l Century Fin. Enters.*, 323 F.Supp.2d at 876 ("The majority view emphasizes that the text of § 1334(c)(2) requires

only that an action is 'commenced' in a state forum, not that one is 'pending.' ").

**29.** 28 U.S.C. § 1452(a) provides as follows:

A party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

Quick Capital Lawsuit was removed pursuant to 28 U.S.C. § 1441(a), under which "any civil action brought in a State court *of which the district courts of the United States have original jurisdiction,* may be removed by the defendant or the defendants . . . ." 28 U.S.C. § 1441(a). *See* Notice of Removal (stating that the Debtor was entitled to removal pursuant to 28 U.S.C. § 1441(a)). The Quick Capital Lawsuit, therefore, was removable only because a federal district court would have had jurisdiction over it in the first instance. Specifically, the New York Federal Court had diversity jurisdiction given that Quick Capital is incorporated in New York, the Debtor is not a resident of or domiciled in New York and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332; Notice of Removal filed with the New York Federal Court (copy attached as Exhibit A to Doc. 71) ¶¶ 7–8 (stating that "[t]he matter in dispute exceeds the sum of $75,000, exclusive of interest and costs" and that the New York Federal Court "has jurisdiction by reason of diversity of citizenship of the parties"). For this reason, it cannot be the case that the Quick Capital Lawsuit "could not have been commenced in a court of the United States absent jurisdiction under [§ 1334(c)(2) ]" for purposes of mandatory abstention. 28 U.S.C. § 1334(c)(2). And, under *Loewnbraun,* for mandatory abstention to apply a proceeding must lack a federal jurisdictional basis absent the bankruptcy. That is not the case with respect to the Quick Capital Lawsuit. The Court, therefore, need not abstain from Count Three of the Complaint—in which the Debtor seeks declaratory relief as to the Quick Capital Note, including a judgment that he has no unsatisfied obligations under it—or from any of the other Bankruptcy Law Counts.

28 U.S.C. § 1452(a).

## 2. The State Law Counts

The Court next will consider whether it must abstain from adjudicating the State Law Counts so that those claims may be heard in the Florida State Court. Unlike the Bankruptcy Law Counts, the State Law Counts are based entirely on state law, and the Court has only related-to jurisdiction over them. And, unlike Count Three and the Quick Capital Lawsuit, the State Law Counts and the Florida Lawsuits provide no grounds for federal jurisdictional absent the Debtor's bankruptcy. Other than bankruptcy jurisdiction, there appears to be no federal question basis for jurisdiction over the claims pending in the Florida State Court. Given the Debtor's domicile and MAQ Management's organization in Florida, there also appears to be no basis for diversity jurisdiction. *See Nat'l Century Fin. Enters.,* 323 F.Supp.2d at 874 ("[D]iversity jurisdiction does not exist because each case has at least one plaintiff and one defendant who are Arizona citizens.").

There also is no reason to believe that the Florida State Court is not a state forum of appropriate jurisdiction or that it is incapable of timely adjudicating any claims pending there. During the hearing in the Dissolution Lawsuit, the Honorable Timothy McCarthy suggested that he and the other judges of the Florida State Court have—as does this Court—a heavy case load. *See* Transcript at 6:18–20 ("I have only got 2,200 cases, and 58,000 foreclosure cases so I really need some additional files."). Despite this, he devoted considerable time and attention to hearing (and ultimately denying) FLOHIO's motion for appointment of a receiver. *Cf. XL Sports,* 49 Fed.Appx. at 20 ("Nothing in the record indicates that the Tennessee

courts would not adjudicate the claim in a timely fashion or that the chancery court lacks jurisdiction.").

Mandatory abstention, however, does not apply to the State Law Counts because, notwithstanding the pendency of the Florida Lawsuits, the Court concludes that an action has not been commenced in a State forum of appropriate jurisdiction within the meaning of 28 U.S.C. § 1334(c)(2). In this regard, it must be kept in mind, as explained above in connection with the Court's discussion of the transfer-of-venue issue, that the parties to this adversary proceeding are not the same as the parties to the Florida Lawsuits and that the relief being sought in the Florida Lawsuits is substantially different from, and generally much more limited than, the relief being sought in this adversary proceeding. In the Dissolution Lawsuit it is FLOHIO, not the Debtor, that seeks the dissolution of FLOVEST. Although the Debtor is a defendant in the Specific Performance Lawsuit, he is not a plaintiff or counterclaimant. Rather, it once again is FLOHIO as counterclaimant that is requesting that the Florida State Court require MAQ Management to sell its interest in FLOVEST to FLOHIO; it also is FLOHIO requesting that the Florida State Court declare that Nemesis and Doukas have no right to FLOHIO's membership interest in FLOVEST. By contrast, FLOHIO is not a party to this adversary proceeding.

As with the parties, the issues in this adversary proceeding and the Florida Lawsuits also are not the same. In this adversary proceeding the Debtor does not seek the dissolution of FLOVEST and does not request that the Court require MAQ Management to sell its interest in FLOVEST to FLOHIO. In that respect, the Florida Lawsuits involve claims for relief not requested in this case. Other-wise, the relief sought here is much broader than that requested in the Florida State Court. As explained above, MAQ Management seeks relief in the Florida State Court only with respect to FLOVEST, not with respect to the other Bavelis–Qureshi LLCs, and this adversary proceeding, unlike the Florida Lawsuits, includes core bankruptcy matters that the Debtor could not have brought without commencing his bankruptcy case. Finally, the issue of whether the Debtor on behalf of the estate, rather than FLOHIO, is entitled to relief on account of the State Court Counts is not before the Florida State Court.

For all of the reasons set forth above, the Court finds that the pendency of the Florida Lawsuits does not support a finding that an action has been commenced in a state forum of appropriate jurisdiction that would require this Court to abstain from hearing this adversary proceeding. *See ConocoPhillips Co. v. Semgroup, L.P. (In re SemCrude, L.P.),* 428 B.R. 82, 101 (Bankr.D.Del.2010) ("[T]he various state court actions do not appear to contain all of the parties and all of the causes of action encompassed by the [adversary proceedings], calling into question whether 'an action' has been 'commenced' for purposes of § 1334(c)(2)."); *AHT Corp. v. Bioshield Techs., Inc. (In re AHT Corp.),* 265 B.R. 379, 387–88 (Bankr.S.D.N.Y.2001) ("Counts II (breach of the Asset Purchase Agreement) and VII (equitable subordination) obviously are not asserted in the State Court Action and are not comprehended by the claims asserted in that Action. . . . Accordingly, it cannot be said that the requirement of 'an action is commenced' has been met in this case."); *Nationwide,* 130 B.R. at 779 ("[A]lthough the state court proceeding does contain some of the same parties and some of the same causes of action which are present in this adversary, the state court proceeding could not, if [plaintiff] prevailed, provide the relief

which Nationwide could obtain in this adversary, nor would such relief be obtained against the same parties in both proceedings. As a result, the court concludes that the adversary in this court is a different 'action' than the state court proceeding."). The Florida Lawsuits, therefore, do not require the Court to abstain from exercising its jurisdiction.

In sum, although a different analysis applies to the Bankruptcy Law Counts and the State Law Counts, the conclusion is the same: mandatory abstention does not apply. For all of the reasons set forth above, the Court rejects the Defendants' arguments that it must abstain from hearing this adversary proceeding.

## G. Permissive Abstention

■■■ If mandatory abstention is inapplicable, the Court should, according to the Defendants, exercise permissive abstention, which also is known as discretionary abstention. They base this argument on the state law issues present in this adversary proceeding, the alleged minimal effect that abstention would have on the administration of the Debtor's bankruptcy estate and the judicial efficiency the Defendants believe would be served by having the Florida State Court and the New York Federal Court decide the matters pending there—avoiding, according to the Defendants, the necessity of this Court's submitting, subject to de novo review, proposed findings of fact and conclusions of law to the District Court with respect to any rulings on non-core matters. See Qureshi Motion at 16–17; Doukas Motion at 8–10. For the reasons explained below, the Court finds none of the grounds for permissive abstention posited by the Defendants to be persuasive.

■■■ Permissive abstention is governed by 28 U.S.C. § 1334(c)(1), which states that:

Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1). Permissive abstention under § 1334(c)(1) is "an extraordinary and narrow exception to the duty of the federal courts to adjudicate controversies which are properly before it." *United Sec. & Commc'ns*, 93 B.R. at 961 (internal quotation marks omitted).

■■■ In deciding whether to exercise permissive abstention, courts have considered the following factors:

1) the effect or lack of effect on the efficient administration of the estate if a court abstains; 2) the extent to which state law issues predominate over bankruptcy issues; 3) the difficulty or unsettled nature of the applicable state law; 4) the presence of a related proceeding commenced in state court or other non-bankruptcy court; 5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334; 6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; 7) the substance rather than form of an asserted 'core' proceeding; 8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; 9) the burden of this court's docket; 10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; 11) the existence of a right to a jury trial; 12) the presence in the proceeding of nondebtor parties; and

13) any unusual or other significant factors.

*Nat'l Century Fin. Enters.*, 323 F.Supp.2d at 885 (quoting *Mann v. Waste Mgmt. of Ohio, Inc.*, 253 B.R. 211, 214 (N.D.Ohio 2000)).

The Court concludes that, on balance, these factors weigh against abstention. As previously discussed in connection with its consideration of the requested transfer of venue, the efficient administration of the Debtor's bankruptcy estate would be served by the Court's adjudication of this adversary proceeding. Thus, the first factor listed above supports the Court's decision to decline to abstain from hearing this adversary proceeding.

So to do the second through fourth factors, which relate to the status of applicable state law and the proceedings pending in state court. The Defendants' arguments based on state law do not support abstention. Notwithstanding the Defendants' contention that this adversary proceeding raises only state law issues, bankruptcy law issues predominate. The Complaint is largely grounded in core matters that arise under provisions of the Bankruptcy Code. Moreover, the state law issues present in this adversary proceeding are not unsettled and, as the Qureshi Defendants concede, also are not complex. *See* Qureshi Motion at 17. As also explained above, the proceedings in state court are not sufficiently similar in scope to this adversary proceeding. *Cf. Lindsey v. Dow Chem. Co. (In re Dow Corning Corp.)*, 113 F.3d 565, 570–71 (6th Cir.1997) ("Although the cases are premised on state law, the district court did not indicate why the state law nature of the claims justified discretionary abstention; indeed, it appears that it does not. . . . Moreover, there is no suggestion that the

state law issues in these cases are unique, unsettled, or difficult. Given the genesis of section 1334(c)(1), it is not surprising that the primary determinant for the exercise of discretionary abstention is whether there exists unsettled questions of state law." (citation and internal quotation marks omitted)). Thus, the second, third and fourth factors—the extent to which state law issues predominate over bankruptcy issues, the difficulty or unsettled nature of the applicable state law and the presence of a related proceeding commenced in state court or other non-bankruptcy court—strongly suggest that abstention would be inappropriate.

■■■ Several other factors militate against abstention. The core proceedings in this adversary proceeding are core in substance rather than merely in form, and it would not be feasible to sever the state law claims from the core bankruptcy matters. And the Court finds that forum shopping is not an issue. In fact, as discussed above, the Debtor would have been unable to bring the fraudulent transfer actions that are the subject of this adversary proceeding without first commencing a bankruptcy case. *See Official Unsecured Creditors' Comm. of Hearthside Baking Co. v. Cohen (In re Hearthside Baking Co.*, 391 B.R. 807, 818 (Bankr. N.D.Ill.2008)) ("[T]here is no issue of forum shopping in this case; a bankruptcy court is where the . . . adversary proceeding should have been filed."). Nor does the existence of a right to a jury trial counsel in favor of abstention. The Defendants have not made the jury-trial argument. Even if they had, and even if they refused to consent to this Court's conducting a jury trial under to 28 U.S.C. § 157(e),[30] "a party may move to withdraw the reference to preserve a trial by jury." *Hearthside Baking Co., Inc.*, 391 B.R. at

---

**30.** Pursuant to 28 U.S.C. § 157(e), "[i]f the right to a jury trial applies in a proceeding

that may be heard under this section by a bankruptcy judge, the bankruptcy judge may

818. *See also SemCrude,* 428 B.R. at 102 n. 16.[31]

The Defendants contend that the presence of non-core claims justifies the exercise of permissive abstention, *see* Qureshi Motion at 13, 16–17; Doukas Motion at 10, because the Court would, rather than being able to enter final orders on such claims, be required to submit, subject to de novo review, proposed findings of fact and conclusions of law to the District Court pursuant to 28 U.S.C. § 157(c), which provides as follows:

> (c)(1) A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.
>
> (2) Notwithstanding the provisions of paragraph (1) of this subsection, the district court, with the consent of all the parties to the proceeding, may refer a proceeding related to a case under title 11 to a bankruptcy judge to hear and determine and to enter appropriate orders and judgments, subject to review under section 158 of this title.

28 U.S.C. § 157(c).

True, the Court will, unless the District Court orders otherwise and the parties consent pursuant to 28 U.S.C. § 157(c)(2), be required to submit proposed findings of fact and conclusions of law to the District Court with respect to non-core matters. Although the Defendants do not cite any cases in support of their argument in this regard, courts indeed have considered the restriction on their ability to enter final orders in non-core matters as being relevant to whether the efficient administration of the estate would be served by abstention. *See Taub v. Taub (In re Taub),* 413 B.R. 81, 93 (Bankr.E.D.N.Y. 2009) ("One relevant factor is the effect that abstention would have on the efficient administration of the Debtor's estate. Abstention would not impede and would aid the administration of this bankruptcy estate in view of the Court's inability, in the absence of all parties' consent, to enter judgment on non-core issues, including the Debtor's claims related to the Grand Avenue Properties."). In *Taub,* however, the court also found that state law issues predominated over bankruptcy issues and that there were no core matters at issue in the adversary proceeding. *See id.* at 93–94. *See also Worldwide Collection Servs. of Nevada, Inc. v. Aaron (In re Worldwide Collection Servs. of Nevada, Inc.),* 149 B.R. 219, 224 (Bankr.M.D.Fla.1992) ("There is no question that the claim asserted by the Debtor is based on pure State law. It is equally clear that this is a civil proceeding merely related to a case under Title 11 and this Court is without jurisdiction to enter a final binding judg-

conduct the jury trial if specially designated to exercise such jurisdiction by the district court and with the express consent of all the parties." 28 U.S.C. § 157(e).

31. A district court sometimes will withdraw the reference only after the matter is actually ready for trial. *See Doucet v. Drydock Coal Co. (In re Oakley),* No. 2:06–cv–556, 2007 WL 710244, at *3 (S.D.Ohio Mar.6, 2007) ("Turn-

ing to the Defendants' other argument, even assuming they have a right to a jury trial, the appropriateness of removal of the case to a district court for trial by jury, on asserted Seventh Amendment grounds, will become a question ripe for determination if and when the case becomes trial ready." (internal quotation marks omitted)).

ment absent consent by the Defendants by virtue of 28 U.S.C. § 157(c)(1). Based on the foregoing, this court is satisfied that the Motion to Abstain pursuant to 28 U.S.C. § 1334(c)(1) of the Bankruptcy Code is well taken and should be granted."); *Shelly's Inc. v. Food Concepts of Wis., Inc. (In re Shelly's Inc.)*, 97 B.R. 370, 372 (Bankr.S.D.Ohio 1989) ("[T]he Court determines that abstention is appropriate. Shelly's complaint presents issues of state law only. No claim or right granted by the Bankruptcy Code is in issue in the case *sub judice.*").

By contrast, in a case involving both core fraudulent transfer actions and non-core matters, a bankruptcy court declined to exercise its discretion to abstain from adjudicating an adversary proceeding under the permissive abstention doctrine despite its recognition that it would be required to submit proposed findings of fact and conclusions of law to the district court on the non-core matters. *See Morris v. Burghart (In re Burghart)*, No. 03–5146, 2004 WL 2026805, at *1 (Bankr.D.Kan. Jan. 15, 2004) ("[T]his Court can only hear the 'related to' claim under 28 U.S.C. § 157(c)(1) and make a report to the district court. Moreover, because the fraudulent transfer action is clearly within the ambit of 28 U.S.C. § 157 and should be tried in the bankruptcy court, no purpose would be served by requiring either party to litigate this matter twice, once here and once in an overburdened state court. Therefore, the Court declines to exercise permissive abstention...."). The Court finds that the presence of fraudulent transfer and other core matters in this adversary proceeding makes *Burghart* the better guidepost for its permissive abstention analysis here. Thus, the possibility that the Court will—unless the parties consent and the District Court orders otherwise— be required to submit, subject to de novo review, proposed findings of fact and con-

clusions of law to the District Court on non-core matters does not shift the balance in favor of permissive abstention.

Two factors to be considered in the permissive abstention context weigh in favor of abstention. First, there is no basis for the Court's jurisdiction over this adversary proceeding other than 28 U.S.C. § 1334. *Cf. Taub*, 413 B.R. at 80 ("As noted above, this Adversary Proceeding is based upon the Bankruptcy Code and the Bankruptcy Rules, and there is no basis for federal jurisdiction other than 28 U.S.C. § 1334."). Second, there are nondebtor parties to the adversary proceeding. But these two factors in and of themselves, when balanced against the other factors discussed above, are insufficient to warrant the exercise of permissive abstention. *See DeGirolamo v. Applegate (In re Applegate)*, 414 B.R. 209, 217 (Bankr.N.D.Ohio 2008) ("The causes of action here make this a core proceeding, one 'arising in' a case under title 11 ... which makes the fact that [§ 1334(b) ] is the sole basis of jurisdiction less convincing as an argument for permissive abstention than it would be if § 1334(b) were grasping this matter with nothing but the tips of its fingernails."). For all of the reasons set forth above, the Court will not abstain from this adversary proceeding.

## H. Equitable Remand

Finally, the Doukas Defendants seek equitable remand of the Quick Capital Lawsuit to the New York State Court pursuant to 28 U.S.C. § 1452(b). The permissive-abstention analysis that the Court just conducted "is largely the same asunder § 1452(b)[,]" *Nat'l Century Fin. Enters.*, 323 F.Supp.2d at 885, and the result, therefore, would be the same if the Court were in a position to decide the remand issue.

■ The Court, however, concludes that it currently has no authority one way or another to decide whether the Quick Capital Lawsuit should be remanded to the New York State Court. Remand under 28 U.S.C. § 1452(b) would follow on the heels of a removal of a claim or cause of action under 28 U.S.C. § 1452(a), which provides for removal "to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section § 1334 of this title." 28 U.S.C. § 1452(a). As previously noted, the Quick Capital Lawsuit was not removed pursuant to 28 U.S.C. § 1452(a), but instead was removed pursuant to 28 U.S.C. § 1441(a). Even if removal had been effectuated pursuant to 28 U.S.C. § 1452(a), the removal would had to have been to the district where the Quick Capital Lawsuit was pending (*i.e.*, the Eastern District of New York), not to the Southern District of Ohio. *See DVI Fin. Servs. Inc. v. Cardiovascular Labs., Inc.*, No. 03–1257DWS, 2004 WL 727105, at *2 n. 7 (Bankr.E.D.Pa. Mar. 18, 2004) ("Removal of a pending state action must be to the ... district in which the [state court] action is pending rather than the district in which the bankruptcy case is pending. Once removed, a motion to change venue to the home court of the bankruptcy may be filed." (citation omitted)). And the Quick Capital Lawsuit in fact was removed—pursuant to 28 U.S.C. § 1441(a)—to the New York Federal Court, not to the District Court for the Southern District of Ohio.

■ The section of the Judicial Code on which Quick Capital relies for its remand argument provides in pertinent part that *"[t]he court to which such claim or cause of action is removed may remand* such claim or cause of action on any equitable ground." 28 U.S.C. § 1452(b) (emphasis added). The authority to remand actions removed pursuant to 28 U.S.C. § 1441(a) likewise naturally belongs to the court to which the action was removed.

The court to which a state court action involving a debtor is removed might conclude that the presiding bankruptcy court is the appropriate court to decide the remand issue. *See MD Acquisition*, 2009 WL 466383, at *6 ("[T]he bankruptcy court is in the best position to consider ... remand's effect on the efficient administration of Martin Designs' estate. . . ."); *Tallo v. Gianopoulos*, 321 B.R. 23, 29 (E.D.N.Y. 2005) ("Upon reconsideration, I conclude that the bankruptcy court of the Southern District of New York, being the home court of the bankruptcy proceeding and being familiar with the litigation, is better situated to determine the propriety of remand."); *DVI Fin. Servs.*, 2004 WL 727105, at *3 ("The bankruptcy judge charged with administering the bankruptcy case has the knowledge of ... the Plaintiffs' Chapter 11 case to accurately assess whether the bankruptcy court or State Court should adjudicate the Action."). A split of authority, however, exists on the issue of whether the district court to which the lawsuit was removed or the bankruptcy court where the debtor's case is pending should decide the remand issue. *See Frelin*, 292 B.R. at 379 (citing cases on both sides of the issue).

In any event, the New York Federal Court has not transferred the Quick Capital Lawsuit to the Southern District of Ohio for a decision on the issue of equitable remand. And the Court is aware of no authority that would support its wresting from the New York Federal Court that court's right to either (1) decide the remand issue itself or (2) transfer the issue, along with the rest of the Quick Capital Lawsuit, to the Southern District of Ohio. This Court, therefore, has no authority to rule on the Doukas Defendants' request

for equitable remand prior to any transfer of the Quick Capital Lawsuit from the New York Federal Court.

## VI. Conclusion

For the foregoing reasons, the Court declines to dismiss, transfer, remand or abstain from hearing this adversary proceeding. The Motions, therefore, are **DENIED.** The Debtor shall have 30 days after the entry of this opinion and order to obtain reissued summonses (as required by Bankruptcy Rule 7004(e)) and to serve a properly executed summons on each of the Qureshi Defendants.

**IT IS SO ORDERED.**